[No. 4744.   Decided December 11, 1903.]

THE PACIFIC NATIONAL BANK OF TACOMA, *Respondent*, v. THE AETNA INDEMNITY COMPANY (*impleaded with Claude M. Seeley*), *Appellant*.[1]

INSURANCE—GUARANTY—AUTHORITY OF AGENTS—POWER OF ATTORNEY—CONSTRUCTION. A letter of attorney authorizing an insurance agent to execute as attorneys in fact all bonds guaranteeing the fidelity of persons "and the performance of contracts other than insurance policies," is sufficiently broad to authorize a contract guaranteeing the repayment of money loaned by a bank for the purpose of completing the construction of a vessel, Laws of 1897, pp. 332, 333, recognizing such indemnity obligations.

SAME—EVIDENCE OF AUTHORITY. The charter of the company reciting the same powers is also properly received in evidence to show the agents authority.

SAME—PRINCIPAL AND AGENT—LOCAL AGENT REPRESENTING BOTH PARTIES—BOND TO AGENT AS PRINCIPAL—APPROVAL AND REPRESENTATIONS BY GENERAL AGENT. The bond of a surety company guaranteeing the repayment of a loan made to S as trustee for ship builders, for the purpose of completing the construction of a ship, which provided that it should not be valid until signed on the part of the company by S, who was its district agent, and which bond is signed by S, trustee, as principal in the bond, and

[1]Reported in 74 Pac. 590.

also as district agent for the company, is not on that account void on the theory that S acted as agent for both principal and surety, where it further appears that it was executed and delivered in the presence of the general agents, who secured the loan by representations as to the surety company's interest in the construction of the ship, and the bond was also signed by them, and S, who was a subordinate agent, signed as district agent at their request, the clause requiring such district agent to sign having been inserted by the general agents without being required by the company.

SAME—KNOWLEDGE—RATIFICATION.  Such signing by the district agent must be held to have been with the knowledge and consent of the company, the general agents having acted within the scope of their authority, and in good faith, and there being no evidence that the agent was secretly acting for both parties.

SAME — CLAUSE IN BOND REQUIRING SIGNATURE BY DISTRICT AGENT—EXECUTION BY GENERAL AGENTS.  Where general agents of a surety company appoint a district agent, and, without the company's requirement, insert a clause that the bond shall not be valid until signed by the district agent, a bond signed by the general agents, under a letter of attorney empowering them to sign all bonds, does not require the signature of the district agent as such, where he is the principal in the bond.

SAME—CONSIDERATION—PREPAYMENT OF PREMIUM.  An indemnity bond guaranteeing the repayment of money advanced is valid without the payment of any premium, when it contains no condition making such payment a prerequisite, and the advance was secured by representations of the company's general agents showing an interest of the company in the advance, which was to save a loss on other bonds issued by the company.

TRIAL—DIRECTED VERDICT.  When the evidence authorized judgment for the plaintiff, and defendant offers no evidence, there is no disputed evidence on material points, and it is proper to direct a verdict for the plaintiff.                                  .

Appeal from a judgment of the superior court for Pierce county, Snell, J., entered February 28, 1903, upon the verdict of a jury rendered in favor of plaintiff by direction of the court.  Affirmed.

*Campbell & Powell,* for appellants.  The contract required the exercise of judgment and discretion by the

agent, and is void when he acts for both parties, regardless of the fact of fraud or actual injury. *New York Cen. Ins. Co. v. National etc. Ins. Co.,* 14 N. Y. 85; *S. C.* 20 Barb. 470; *Claflin v. Farmers' Bank,* 25 N. Y. 293; *S. C.* 24 How. Prac. 1; *Empire State Ins. Co. v. American Cent. Ins. Co.,* 138 N. Y. 446, 34 N. E. 200; *Ritt v. Washington Ins. Co.,* 41 Barb. 353; *Michuud v. Girod,* 4 How. 513, L. Ed. 1076; *Porter v. Woodruff,* 36 N. J. Eq. 174; *Greenwood v. Spring,* 54 Barb. 377; *Everhart v. Searle,* 71 Pa. St. 256; *Farnsworth v. Hemmer,* 1 Allen (Mass.) 494; *Meyer v. Hanchett,* 43 Wis. 246. The clause in the bond was sufficient to give the bank notice. *Shauer v. Alterton,* 151 U. S. 607, 14 Sup. Ct. 442, 38 L. Ed. 286. Guaranteeing the agent's note was not authorized and was a fraud upon the company. *Wing v. Hartupee,* 122 Fed. 897.

*E. M. Hayden* and *John A. Shackleford,* for respondent.

HADLEY, J.—This is a suit upon a guaranty bond. The instrument sued upon purports to have been executed by Seeley & Co. as trustee for John B. Hardy and the Hardy Ship Building Company, as principals, and by the appellant the Aetna Indemnity Company, a corporation existing under the laws of the state of Connecticut, as surety. The bond runs to the Pacific National Bank, respondent herein, and is in the sum of $7,500. It contains the following recitals as to its purpose and conditions:

"Whereas, Seeley & Co., agents, are acting as trustee for John B. Hardy and the Hardy Shipbuilding Co., and as such trustee are completing two contracts, viz., building one barkentine, called the 'John C. Meyers,' for the firm of Sudden & Christienson, of San Francisco, California, and one steam schooner for Captain A. W. Horne; and as such trustee it becomes necessary to advance money on these contracts, they have therefore entered into an agreement with the Pacific National Bank in consideration of

their advancing the funds necessary in an amount the total of which is not to exceed the total of this bond, principal and interest, and they hereby agree as such trustee that said money shall be repaid to the said Pacific National Bank on or before October 12th, 1902.

"Now, therefore, the condition of the foregoing obligation is such that, if the principle shall well, truly, and faithfully comply with all the terms, covenants, and agreements on their part to be kept and performed, according to the tenor thereof, and shall well and truly pay the moneys thus advanced by the said Pacific National Bank, then this obligation to be null and void; otherwise to be and remain in full force and virtue in law."

The complaint alleges the advancement of money by the bank in accordance with the terms of the agreement mentioned in the bond to the extent of $7,500, and also that default was made in its payment. As a defense the answer alleges, that, at the time of the execution and delivery of the purported bond, Claude M. Seeley, under the name of Seeley & Co., was employed by appellant under a stated compensation as its district agent to solicit indemnity and guaranty risks, and in his discretion and judgment to deliver all bonds made by appellant in the district embracing the city of Tacoma; that all bonds delivered by appellant in said district, while said Seeley & Co. was in the employ of appellant, contained the following express condition: "This bond shall not be valid, however, until signed by Seeley & Co., district agents at Tacoma, Washington." It is further alleged that it was the duty of said Claude M. Seeley, under the name of Seeley & Co., as such agent, if in his judgment any risk offered was a proper one, to countersign the bonds of appellant covering such risks in order to complete the execution thereof by appellant; that the respondent bank had notice of the fact of such agency, and of the extent of its powers and duties; that, at the time of

the execution of the purported bond, said Seeley was act-
ing as agent and trustee for John B. Hardy and the Hardy
Ship Building Company mentioned therein, and as such
agent was clothed with large powers and broad discretion;
that, in purporting to accept said risk and to execute said
bond, he attempted to act as agent both for appellant and
for said John B. Hardy and the Hardy Ship Building
Company, without the knowledge or consent of appellant;
that, upon learning that said purported bond had been so
executed, appellant immediately disaffirmed the said acts
of said Seeley, and that said purported bond is void as
against public policy. It is further alleged that the bond
is without any consideration moving to appellant.

At the trial, after the plaintiff rested, the defendant also
rested without offering any testimony. Thereupon the
plaintiff challenged the legal sufficiency of any evidence in
the case to constitute a defense, and moved the court to de-
cide, as a matter of law, that the plaintiff is entitled to a
verdict and judgment as prayed in the complaint, and fur-
ther that the case be taken from the jury, and judgment
directed in favor of plaintiff. The motion was granted, the
jury discharged, and judgment accordingly entered. The
defendant surety company has appealed from the judg-
ment.

It is assigned that the court erred in admitting in evi-
dence, over objection, the letter of attorney from appellant
to one Clemens, as evidence of his authority to execute the
bond in question. The bond was signed by said Clemens as
the attorney in fact of appellant, and it was sought by the
offered evidence to show his authority for so signing. It is
contended that the operative words of the letter of attorney
are insufficient to authorize the execution of a bond of the
nature of the one in question, which it is insisted is a con-

tract of credit insurance.   The following words appear in
the letter of attorney:

"That he be, and he is, hereby authorized and empowered
to execute and deliver and attach the seal of the company
to any and all bonds and undertakings for, or on behalf of,
the company in the business of guaranteeing the fidelity
of persons holding places of public or private trust, and
the performance of contracts other than insurance policies."

The learned trial court adopted the view that the words,
"and the performance of contracts other than insurance
policies," are broad enough to authorize the execution of
bonds guaranteeing the performance of all kinds of con-
tracts except insurance policies.   In that view we concur.
Our statute (chap. 114, Session Laws 1897, pp. 332, 333)
recognizes that indemnity obligations to guarantee the per-
formance of contracts may be authorized by guaranty com-
panies.   We think it was not error to admit the letter of
attorney.

A similar error is assigned upon the admission in evi-
dence of a certified copy of the charter of appellant com-
pany.   The offered evidence recites the same powers which
were contained in the aforesaid letter of attorney, and, for
the reasons stated in reference to the admission of the lat-
ter, it was not error to admit the evidence in question.   Both
broadly authorize the guaranteeing of contracts.   The con-
tract guaranteed here was the agreement to repay certain
advancements to be made by respondent bank.

It is next urged that the court erred in admitting in evi-
dence the bond in suit.   The instrument contained the
words hereinbefore quoted, viz., "This bond shall not be
valid, however, until signed by Seeley & Co., district agent
at Tacoma, Washington."   It will be remembered that the
above words were set out in appellant's answer, and alleged
to have been required by appellant in all bonds executed

and delivered in its behalf in the district, including the city of Tacoma. It is not disputed that Mr. Seeley, under the style of Seeley & Co., was the trustee and agent of the principals in the bond, and it was executed by him for the principals as such agent and trustee. The instrument was also countersigned as follows: "Countersigned at Tacoma, Wash., this 12 day of June, 1902. Seeley & Co., district agent." Upon the face of the instrument, it would therefore appear that Mr. Seeley acted as agent for both the principals and the surety in the execution of the bond. If such were the fact, and if appellant had not consented thereto, we apprehend that the objection to the introduction of the bond as evidence should have been sustained for reasons of public policy, since such reasons prevent one from acting as agent for both parties to a transaction without their consent.

The evidence however showed, that, at the time the bond in question was executed, the firm of Clemens & O'Bryan, of Portland, Oregon, were the general agents of appellant for the states of Oregon and Washington; that, for the purpose of executing bonds, W. J. Clemens of that firm held the power of attorney to which reference has already been made. The Mr. Seeley mentioned was appointed by said firm of Clemens & O'Bryan as their subordinate agent to procure business in Tacoma and vicinity. The evidence did not show that appellant itself had required the words quoted above to be inserted in its bonds. Said Clemens testified that he caused those words to be inserted in bonds executed and delivered in the Tacoma district under the theory that it might be necessary, in order to fully comply with the law of this state permitting appellant to do business here, for some one residing in the state to countersign the bonds as an agent. The custom of including said

clause, and of countersigning bonds in that manner, was thus inaugurated by said Clemens and his firm, and not by any requirement of appellant, as far as appears from the evidence.

It further appeared from the testimony that said Clemens himself, while acting as the general agent of appellant, went with Mr. Seeley to the respondent bank and requested advancements to said John B. Hardy and the Hardy Ship Building Company, for whom Seeley was trustee.    The bank at first declined to make them, but Clemens stated to the officers of the bank, that the appellant company had already given a bond; that he had been looking the matter up, and was quite sure that the payments due on the ship would take care of any advances; that appellant would be willing to guarantee that the money would be paid in that way, and offered to furnish a bond in order to keep appellant out of trouble.    With such offer to give the bond of appellant, it was then agreed that the bank would advance sums not exceeding $7,500.    The bond was then drawn by Clemens, and signed by him as attorney in fact.    It was further signed, "Clemens & O'Bryan, Manager."    Clemens then requested Seeley to countersign it, after the manner he had been in the habit of doing with other bonds, and Seeley did so upon Clemens' request.    The bond was then delivered to the bank by Clemens, or at least in his presence and by his direction, and the advancements were afterwards made.

Under the testimony, we therefore think the bond was executed by Clemens as the general agent of appellant, and under the power of attorney aforesaid; that the inclusion of the quoted words in the bond was not required by appellant, but they were inserted by Clemens, who had authority to execute a bond without them; that, although Seeley did

formally countersign the bond, conformably to the inserted clause, yet he did it at the request of Clemens, appellant's agent, and he did not in fact represent appellant in the execution of the bond, but it was actually represented by its general and duly authorized agent, the superior of Seeley.

Clemens, as the general agent of appellant, had full notice. He knew that Seeley was the agent of the principals in the bond, and, with that knowledge, requested him to countersign it in the name of appellant. Even if the countersigned signature possessed any real virtue, in the execution of the bond Clemens was acting within the scope of his authority, and his consent that Seeley should countersign it must be held to have been with the knowledge and consent of appellant. This is the general and well recognized rule. Mechem on Agency, § 718; 1 Am. & Eng. Enc. Law (2d ed.) 1144.

The cases cited by appellant did not show knowledge and consent on the part of the principal, and, even where the agent was shown to have had knowledge, it was held not to have been knowledge of the principal, because the agent was engaged in some scheme to defraud the principal. Such was the case in *Henry v. Allen,* 151 N. Y. 1, 45 N. E. 355, 36 L. R. A. 658, and also in *American Surety Co. v. Pauly,* 170 U. S. 133, 18 Sup. Ct. 552, 42 L. Ed. 977. In the case of *Shepard v. Hill,* 6 Wash. 605, 34 Pac. 159, also cited, the agent was secretly acting for both parties. There is no such showing in this case. Clemens was clearly acting within the scope of his authority in executing this bond, and there is no showing of fraud. But, upon the contrary, under his testimony, which is not disputed, he believed that by the issuance of this bond his company would be saved a loss upon another bond by means of the advancement made

under this one, and ultimately any loss whatever. Appellant is not, therefore, now in position to say that it did not consent that Seeley should countersign as he did; but, for reasons already stated, we think the bond became effective under the circumstances of its execution, even without that signature. The court did not err in admitting the bond in evidence.

It is further assigned that the court erred in denying appellant's motion to take the case from the jury, and in not deciding as a matter of law that a verdict should be found in favor of appellant, and in not directing a judgment for appellant. In view of what we have already said, we deem it unnecessary to discuss this assignment generally. There is one point raised, however, which merits discussion. If the evidence had not shown this bond to be an obligation of appellant, then it followed that appellant's motion should have been granted. It is urged that no evidence showed that any premium had been paid appellant for this bond, and that it was therefore without consideration. Ordinarily the consideration of the contract for the performance of which a surety obligation is given, is sufficient to sustain such obligation, as against the surety. A consideration moving to the principal alone, contemporaneous with or subsequent to the promise of the surety or guarantor, is sufficient. 1 Brandt on Suretyship & Guaranty, § 15; *Mackenzie v. Board, etc.,* 72 Ind. 189; *Staver & Walker v. Missimer,* 6 Wash. 173, 32 Pac. 995, 36 Am. St. 142.

Appellant, however, cites Frost on the Law of Guaranty Insurance, § 29, as supporting its contention that such a guaranty contract as the one before us is not binding unless a premium has been paid to the insurer. The author states that the existence of the premium as the consideration dis-

tinguishes the contract of fidelity insurance from the obligations of private and gratuitous suretyship. He cites but one case in support of the paragraph cited, *People ex rel. National Surety Co. v. Feitner,* 166 N. Y. 129, 59 N. E. 731. But we are unable to see that the case is authority for the broad statement of the author. Indeed, we understand it to be cited only to the point that "the premium, in the absence of special provisions in the policy authorizing it, cannot be recovered back by the insured upon offering to surrender up his policy." We are therefore left with the unsupported statement of the author.

The broad doctrine announced, if literally applied, would seem to make it necessary in all cases for the person who is to be protected by a guaranty bond to see that the principal therein has paid the premium, and that, too, without regard to the fact that the bond has been actually delivered by the insurer. It seems to us that the rule must be that, when the insurer delivers a bond guaranteeing the acts of another, the beneficiary may assume that the premium has been paid; otherwise, that the bond would not have been executed and delivered; and that the insurer cannot afterwards be heard to say that the premium was not paid, as against the beneficiary who has in good faith parted with value on the strength of the promise in the bond. Especially must this be so when there is no recital in the bond that the payment of the premium is a necessary prerequisite to give it vitality. Guaranty insurance contracts must be controlled largely by the rules which govern ordinary insurance contracts, and under such rules it is not necessary that the premium be actually paid, provided a condition of the policy does not make payment a prerequisite, and the insurer does not insist upon it. 16 Am. & Eng. Enc. Law (2d ed.) 857.

This principle is sustained by the following authorities cited by the editor of the text in the above cited volume, and which we have examined: *King v. Cox,* 63 Ark. 204, 37 S. W. 877; *Firemen's Ins. Co. v. Kuessner,* 164 Ill. 275, 45 N. E. 540; *Jones v. N. Y. Life Ins. Co.,* 168 Mass. 245, 47 N. E. 92; *Lum v. United States etc. Ins. Co.,* 104 Mich 397, 62 N. W. 652; *Campbell v. American etc. Ins. Co.,* 73 Wis. 100, 40 N. W. 661.

There is no condition in the bond before us making the payment of premium a necessary prerequisite, and payment was not exacted at the time the bond was delivered to respondent. We therefore conclude that, under the circumstances attending the delivery of this bond, the nonpayment of premium became immaterial, as between the insurer and the respondent. The material evidence has been already set forth, and we think it was such that the court did not err in denying appellant's motion to take the case from the jury, and in refusing to direct judgment for appellant.

It is next urged that the court erred in granting respondent's motion to take the case from the jury, and in awarding judgment for respondent. Appellant offered no evidence, and there was therefore no disputed evidence upon material points for the consideration of the jury. Under such circumstances, both the evidence and the law, as we view them, authorized a judgment for respondent, and it was not error to grant the motion.

The judgment is affirmed.

FULLERTON, C. J., and DUNBAR, MOUNT, and ANDERS, JJ., concur.