[No. 35546.   Department Two.   January 26, 1961.]

ROYAL N. RIBLET *et al., Appellants,* v. IDEAL CEMENT
COMPANY, *Respondent.*[1]

[1]Reported in 358 P. (2d) 975.

*A. O. Colburn* and *Leo H. Fredrickson,* for appellants.

*Witherspoon, Kelley, Davenport & Toole (William V. Kelley* and *E. Glenn Harmon,* of counsel), for respondent.

FINLEY, C. J.—This is the latest in a series of actions brought by appellants against the Ideal Cement Company or its predecessor, the Spokane-Portland Cement Company. The objective of each action has been a money judgment for damage to appellants' property, allegedly from cement dust emitted from respondent's cement plant. In the first of these cases (which may be referred to for a detailed statement of the facts) we held that the two-year statute of limitations is applicable to the situation and limited recovery to a period running from 1948 to 1950. *Riblet v. Spokane-Portland Cement Co.* (1952), 41 Wn. (2d) 249, 248 P. (2d) 380. Thereafter, appellants commenced actions at two-year intervals. Those that have been appealed to this court are reported in *Riblet v. Spokane-Portland Cement Co.* (1954), 45 Wn. (2d) 346, 274 P. (2d) 574; and *Riblet v. Ideal Cement Co.* (1959), 54 Wn. (2d) 779, 345 P. (2d) 173.

In the instant case, for the first time in the history of these actions, the jury returned a verdict in favor of defendant cement company. Plaintiffs appeal,[2] assigning error to the failure of the trial court to direct a verdict for plaintiff and to the trial court's instruction No. 4. We will consider the assignments in the order of their presentation.

Respondent does not seriously argue that, during the period involved in the instant case, 1956-1958, there was any material change in the manner of operation of the cement plant, or that the amount of dust that fell on appellants' property was significantly less than it had been during the preceding two years. Appellants argue that, because of the absence of change, the trial court should

---

[2]Subsequent to the entry of judgment in the trial court, Mr. Riblet died. Mrs. Riblet, as executrix of the estate, has been substituted in his place as a plaintiff and appellant.

have directed a verdict in their favor. Appellants rely primarily on our statement in 54 Wn. (2d) 779, 345 P. (2d) 173, that

". . . Judgments in prior actions between the Riblets and . . . [the cement company's] privy determined the rights and liabilities of the parties and the law applicable thereto. In the absence of a major factual change, the prior judgment binds these parties."

■ While appellants concede that the theory of estoppel by judgment was not raised in the trial court, they state that our decision in the above case affirming a judgment for damages for the 1954-1956 period was not filed in time for appellants to use it as the basis for a motion for a directed verdict. We have held far too often to require citation of authority that an issue not presented to the trial court cannot be raised for the first time on appeal. We do not agree with appellants' suggestion that Rule on Appeal 63, RCW Vol. 0, which states that the supreme court will disregard technicalities, is pertinent in this case. We do not consider the failure to raise a material issue in the trial court to be a technicality.

■ We point out that appellants' dilemma was not as severe as it may appear at first glance. Not all states are in accord as to the effect of a trial court's judgment for purposes of estoppel by judgment and *res judicata* during the pendency of an appeal. 2 Freeman, Judgments (5th ed.) § 722; Annotation, 9 A. L. R. (2d) 984. However, it is clear that in this state the rule is that an appeal does not suspend or negate the *res judicata* aspects of a judgment entered after trial in the superior courts. *Seattle Nat. Co. v. Gilmore* (1932), 167 Wash. 102, 9 P. (2d) 95; *Spokane & Inland Empire R. Co. v. Spokane County* (1913), 75 Wash. 72, 134 Pac. 688; *Kaufman v. Klain* (1912), 69 Wash. 113, 124 Pac. 391. We see no reason why the doctrine of estoppel by judgment should be treated differently. Appellants could have raised the issue of collateral estoppel by pleading and proving the judgment of the trial court in the 1954-1956 action.

■ We turn now to the trial court's instruction No. 4 and the exceptions taken to it by appellants.[3] The following quotation from instruction No. 4 is indicative of its substance:

". . . if you find that the operation of defendant's cement plant during that period may have caused some interference with plaintiffs' property but that it did not cause any interference which would have been considered unreasonable by persons of normal and ordinary sensibilities under all of the facts and surrounding circumstances of the case, then your verdict should be for the defendant."

Appellants' exception to the instruction was that the reference to normal and ordinary sensibilities was erroneous because (1) there was no evidence "that the Riblets are other than persons of ordinary and normal sensibilities —the presumption being that they are"; and (2) the proper test is how the particular persons involved would be affected.

Although appellants have directed us to cases from other jurisdictions to the effect that a subjective test is to be applied in nuisance cases, the rule in this state—and one supported by eminent textwriters—is that the standard to be applied is that of the person of ordinary and normal sensibilities. *Turner v. Spokane* (1951), 39 Wn. (2d) 332, 235 P. (2d) 300; *Park v. Stolzheise* (1946), 24 Wn. (2d) 781, 167 P. (2d) 412; *Tarr v. Hopewell Community Club* (1929), 153 Wash. 214, 279 Pac. 594; 1 Harper and James, Torts 75; Prosser, Torts (2d ed.) 396.

■ In the memorandum opinion denying appellants' motion for a new trial, the trial court answered their assertion—that there was insufficient evidence that the Riblets were not of normal and ordinary sensibilities to justify the instruction—as follows:

"In the present case, however, there was testimony by Mr. Steiger and Mr. Erickson, neighbors immediately to

---

[3]On appeal, appellants present additional reasons why they believe this instruction to have been incorrect. They cannot be considered because they are not within the scope of the exceptions taken in the trial court. *Lasser v. Grunbaum Bros. Furniture Co.* (1955), 46 Wn. (2d) 408, 281 P. (2d) 832.

the east and to the west of the Riblet property, concerning the fall of dust, and also testimony by Mr. Freund, who lived in a different direction from the Riblets and to the east of the plant. All of them testified that before the Cotrell stack was installed in the plant they had large quantities of cement dust deposited on their property just as the Riblets did. However, since the installation of the stack they have not noticed any deposit, or if there was it was of minute quantity and not offensive. In addition, Mr. Freund testified that he suffers from bronchial asthma and is extremely sensitive to dust of any kind, but has not been troubled because of this allergy during the years he has lived in his present home.

"It would appear to the court that this evidence, in addition to that offered by John Cook, the engineer, as to the actual amount of dust falling on plaintiffs' property and within a mile radius of defendant's plant, raises an issue for the jury with reference to the Riblets being people of ordinary and normal sensibilities. The issue was specifically raised by defendant's second affirmative defense; and that defense, coupled with the evidence that was admitted, required the court to submit the question of the plaintiffs' sensibilities to the jury. . . ."

We are in accord with the view of the trial court: that the issue was properly presented to the jury. To be sure, none of the evidence adverted to by the trial court compels one to conclude that the Riblets were not of ordinary and normal sensibilities. The amount of dust that fell on the neighbors' property may have differed from the amount that caused annoyance to the Riblets. The witness, John Cook, admitted that there were variations in his measurements, depending on the location of his instruments. Nevertheless, the jury could reasonably conclude from this evidence that the Riblets' property was invaded by substantially the same amount of dust that the other people experienced, and that persons of ordinary and normal sensibilities would not have been as disturbed by it as were the Riblets. The issue was in the case and was properly submitted to the jury.

During argument in support of their motion for a new trial, appellants raised for the first time their theory that instruction No. 4 was erroneous because the doctrine

of estoppel by judgment applied. Since this argument was made after the charge to the jury, it was not timely raised. *Johnson v. Howard* (1954), 45 Wn. (2d) 433, 275 P. (2d) 736. By waiting until the time for argument on their motion for a new trial, appellants made it impossible for the court to correct the error, if any, in the instructions. *Lasser v. Grunbaum Bros. Furniture Co.* (1955), 46 Wn. (2d) 408, 281 P. (2d) 832; *Rank v. Alaska S.S. Co.* (1954), 45 Wn. (2d) 337, 274 P. (2d) 583.

Further arguments raised by appellants on this appeal do not require discussion. They have been answered by implication by the views stated above.

The judgment of the trial court is affirmed.

HILL, ROSELLINI, FOSTER, and HUNTER, JJ., concur.

---

April 26, 1961. Petition for rehearing denied.

[1]Reported in 358 P. (2d) 958.