[No. 42252. En Banc. September 28, 1972.]

THE STATE OF WASHINGTON, *Appellant,* v. READER'S DIGEST ASSOCIATION, INC., *Respondent.*

*Slade Gorton, Attorney General, Alison Morey Barden* and *Thomas L. Boeder, Assistants,* for appellant.

*Francis Hoague, Frederick L. Noland,* and *MacDonald, Hoague & Bayless,* for respondent.

STAFFORD, J.—This appeal raises questions under Washington State's Consumer Protection Act. The state appeals the trial court's determination that the Reader's Digest Sweepstakes is not a lottery and does not constitute unfair and deceptive conduct in violation of RCW 19.86.020.

The respondent, Reader's Digest Association, Inc., is a mail-order house selling the Reader's Digest Magazine, condensed books, special books and record albums. Since 1962 it has engaged in a promotion program known as the Reader's Digest Sweepstakes. Sweepstakes information is mailed directly to Washington state residents. The enclosures advertise products sold by respondent and inform the addressee that he has been selected for a chance to win a valuable prize. In order to qualify, however, the addressee

must respond. He may return a "yes" form, by which he agrees to purchase advertised goods and enter the drawing, or a "no" form, by which he only enters the drawing. Postage is prepaid by respondent. The mailing states that the Sweepstakes may be entered without making a purchase, and that the addressee's chance of winning is not increased by making a "yes" rather than a "no" reply. All prizes are awarded by chance.

Respondent disseminates two and one-half million Sweepstakes advertisements in Washington annually. Depending upon the county, between 31 and 51 percent of all households subscribe to its magazine.

The Sweepstakes is a highly successful advertising vehicle. The scheme not only has increased sales enough to be more profitable than other forms of advertising, but respondent's advertising revenues have increased concurrently.

The Attorney General brought this action seeking: (1) a declaratory judgment that respondent has violated the Consumer Protection Act, RCW 19.86, and that the Sweepstakes constitutes a lottery and an unfair method of competition; (2) an injunction against conducting or advertising the Sweepstakes in Washington or accepting or receiving Sweepstakes entries from within the state; and (3) an order that respondent pay a "civil penalty" of $2,000 for each advertisement disseminated after May 14, 1970. The trial court suspended the matter of respondent's liability for the "civil penalty" pending trial.

Respondent moved to quash service of process alleging its insufficiency as well as lack of personal jurisdiction. Respondent also moved to dismiss for failure to state a claim and for lack of subject matter jurisdiction. All motions were denied.

Respondent's answer admitted that its prizes are distributed to winners by chance but denied that consideration passes from the Sweepstakes entrant to the Digest. Respondent also denied violation of RCW 19.86.020.

The trial court empaneled an advisory jury. At the end of the state's case, the court denied respondent's motion to

dismiss for failure to prove a claim. Thereafter, the state moved for judgment arguing that: (1) as a matter of law it had established a lottery constituting an unfair method of competition; and, (2) the advertisements on their face are deceptive as a matter of law. The state's motion was denied.

At the end of the case the advisory jury returned a special verdict consisting of answers to six interrogatories submitted by the court. The state moved to reject the special verdict and for judgment notwithstanding the special verdict or for a new trial. The motion was denied. Thereafter, the court entered findings of fact, conclusions of law, and judgment dismissing the complaint.

The state appeals. Error is assigned to the denial of the state's motion for judgment as a matter of law, the trial court's failure to make sufficient findings of fact, to its rulings that the "neighbor copy" issue was moot,[1] to its suspension of "civil penalties," and to its exclusion of certain testimony. No error is assigned to the findings of fact.

Respondent cross-appeals, assigning error to the trial court's denial of its pretrial motions to dismiss for lack of subject matter jurisdiction asserting that (1) RCW 19.86.020 is unconstitutionally vague, (2) the field has been preempted by the United States Postal Department, (3) the acts sought to be enjoined are regulated by the Federal Trade Commission (hereinafter called FTC) and are therefore exempted from the Consumer Protection Act by RCW 19.86.170. The issue of personal jurisdiction is also appealed.

At the threshold we are confronted by respondent's contention that the state has improperly perfected its appeal. Respondent, citing *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959), asserts that since the state has assigned no error to the trial court's findings of

---

[1]"Neighbor copy" was a mailing addressed to a named recipient stating that he and two neighbors, named in the mailing, had been chosen to participate in the Sweepstakes. Pursuant to an FTC cease and desist order "neighbor copy" was discontinued in January 1971. The trial court found the "neighbor copy" promotional material was deceptive and misleading but concluded that the issue was moot.

fact we must accept them as verities. We agree. Respondent argues that since the findings of fact support the conclusions of law and judgment, there is nothing left for us to consider on appeal. We disagree with respondent's conclusion.

■ First, the state contends the trial court erred by denying its "motion for judgment as a matter of law."[2] Respondent argues that an assignment of error to "motions for judgment as a matter of law" which does not refer to the record does not sufficiently point out the action or actions of the trial court assigned as the basis of the appeal. *Williams v. Andresen,* 63 Wn.2d 645, 651, 388 P.2d 725 (1964); *Hill v. Tacoma,* 40 Wn.2d 718, 719, 246 P.2d 458 (1952); ROA I-43. Respondent asserts that in *Williams* we said "pointing out" error involves pointing to the place in the record where it occurred. The rule is designed to apprise the court and respondent of the precise grounds upon which appellant relies. *Hill v. Tacoma, supra.*

Normally we will not consider an assignment of error that does not specifically designate the place in the record where the trial court's action can be found. In this case, however, appellant's brief, in a section immediately preced-

---

[2]The assignment of error is as follows:

"1. The court below erred in denying plaintiff's motions for judgment as a matter of law;

"a. The court erred in failing to hold, as the Washington Supreme Court held in the *Safeway* case, that the prize drawing constitutes a lottery as a matter of law since prize and chance are manifest and the admissions of defendant establish beyond dispute that it is conducted for a valuable consideration. (Discussed in § 1, *infra*)

"b. The court erred in failing to find as a matter of law that the use in trade of conduct which is unlawful or deceptive is contrary to the public interest and constitutes an unfair practice in trade. (Discussed in § II, *infra*)

"c. The court erred in failing to hold that the sweepstakes on their face are designed to and do misrepresent the recipient's chance of winning a prize and that they are therefore deceptive and misleading as a matter of law. (Discussed in § III, *infra*)

"d. The court erred in failing to hold that defendant's neighbor copy ads constitute invasion of privacy through unauthorized use of consumers' names for commercial advantage, and are therefore an unfair practice in trade. (Discussed in § III, *infra*)"

ing the assignments of error, discusses the motions referred to and makes reference to their location in the record. The references sufficiently apprise us of the basis for assignment of error No. 1, and respondent's brief makes it clear that it, too, was sufficiently informed of the precise nature of the assignment. All issues raised in the assignment of error are discussed by the respondent. Thus, respondent is not prejudiced by our considering it.

■ The two state motions in question are (1) the state's motion made at the end of its case and (2) its motion to reject the advisory jury's special verdict and for judgment notwithstanding said special verdict or for new trial. The first motion was inappropriately made and properly denied. Such a motion, made at the end of plaintiff's case, cannot be considered a motion for summary judgment. *See* CR 56(c); Trautman, *Motions for Summary Judgment*, 45 Wash. L. Rev. 1, 13 (1970); Comment, *Summary Judgment*, 34 Wash. L. Rev. 204, 205 (1959). Further, it cannot be treated as a motion for judgment on the pleadings. *See* CR 12(d). We can only conclude that it must have been made in the nature of a motion to dismiss. A trial court can grant a plaintiff's motion to dismiss, made at the end of his own case, if a motion to dismiss or for nonsuit made by the defendant has been denied and the defendant stands on his motion and refuses to proceed with the case. *Pacific Nat'l Bank v. Aetna Indem. Co.*, 33 Wash. 428, 74 P. 590 (1903); *Clancy v. Reis*, 5 Wash. 371, 31 P. 971 (1892). Such a motion should not be granted, however, if the defendant elects to proceed with the case as respondent did in this instance. *See* 5A J. Moore, *Federal Practice* ¶ 50.04 (2d ed. 1971); Trautman, *Motions Testing the Sufficiency of Evidence*, 42 Wash. L. Rev. 787, 793 (1967); Sunderland, *Directing a Verdict for the Party Having the Burden of Proof*, 11 Mich. L. Rev. 198 (1913).

■ The second motion is, in effect, a motion to amend the findings of fact or to make additional findings and to amend the judgment accordingly, pursuant to CR 52(b). *See Steward v. Atlantic Ref. Co.*, 235 F.2d 570, 571 (3d Cir.

1956); *Greenwood v. Greenwood,* 234 F.2d 276, 278 (3d Cir. 1956). When error is assigned to an order denying such a motion, the federal courts treat the assignment as one going to the judgment. *State Farm Mut. Auto. Ins. Co. v. Palmer,* 350 U.S. 944, 100 L. Ed. 823, 76 S. Ct. 321 (1956), *rev'g* 225 F.2d 876 (9th Cir. 1955); *United States v. Stromberg,* 227 F.2d 903 (5th Cir. 1955); Annot., 2 A.L.R. Fed. 545 (1969).

The fact that the state mistakenly appealed from the order denying its motion rather than from judgment is purely a technicality. The state's obvious and overriding intent was to appeal from the judgment. Our rules admonish us to decide cases on the merits, disregarding mere technicalities, where possible. ROA I-63; *compare Kane v. Klos,* 50 Wn.2d 778, 314 P.2d 672 (1957) with *Riblet v. Ideal Cement Co.,* 57 Wn.2d 619, 358 P.2d 975 (1961). Thus, we treat this as an appeal from the judgment.

■ In making its first assignment of error the state claims that the trial court erred:

(a) . . . in failing to hold . . . that the prize drawing constitutes a lottery as a matter of law . . .

(b) . . . in failing to find as a matter of law that use in trade of conduct which is unlawful or deceptive is contrary to the public interest and constitutes an unfair practice in trade.

(c) . . . in failing to hold that the sweepstakes . . . are therefore deceptive and misleading as a matter of law.

(d) . . . in failing to hold that defendant's neighbor copy ads . . . are therefore an unfair practice in trade.

Such assignments of error are sufficient to challenge only conclusions of law and do not bring up for review the findings of fact upon which the conclusions are based. *Koster v. Wingard,* 50 Wn.2d 855, 856-57, 314 P.2d 928 (1957).

■ The trial court made only two conclusions of law: (1) the "neighbor copy" issue was moot; and (2) the complaint should be dismissed. An examination of the findings of fact reveals, however, that finding of fact No. 3 is actually a conclusion of law. Findings of fact that are actually

conclusions of law will be treated as conclusions of law, and it is therefore unnecessary to set them out verbatim in the brief. *Lampson Equip. Rental & Sales, Inc. v. West Pasco Water Sys., Inc.*, 68 Wn.2d 172, 174, 412 P.2d 106 (1966).

■ Finding of fact No. 3 reads:

The Reader's Digest sweepstakes, as it has been conducted, and is being conducted, does not constitute a lottery, in the State of Washington.

The Washington State Constitution, article 2, section 24 declares: "The legislature shall never authorize any lottery . . ." This provision is mandatory and self-executing. *Seattle v. Chin Let*, 19 Wash. 38, 52 P. 324 (1898). It not only prohibits the state from conducting a lottery, but prohibits any form of lottery from being conducted within the state. *State ex rel. Schillberg v. Safeway Stores, Inc.*, 75 Wn.2d 339, 344, 450 P.2d 949 (1969).

■■ Necessary elements for a lottery are well settled: prize, chance and consideration. *Seattle Times Co. v. Tielsch*, 80 Wn.2d 502, 495 P.2d 1366 (1972); *State ex rel. Schillberg v. Safeway Stores, Inc., supra; State v. Danz*, 140 Wash. 546, 250 P. 37, 48 A.L.R. 1109 (1926); *Society Theatre v. Seattle*, 118 Wash. 258, 203 P. 21 (1922). Respondent admits the elements of prize and chance. The only question is whether consideration exists.

While there are divergent views as to what constitutes consideration in the context of a lottery (*see* Annot., 29 A.L.R.3d 888 (1970)), we have adhered to the view that consideration sufficient to support a contract is enough. *Seattle Times Co. v. Tielsch, supra; State ex rel. Schillberg v. Safeway Stores, Inc., supra*. In *Safeway*, we stated at page 349:

Encompassed then within the term *consideration*, as the third element of lottery, *would be those acts of forbearances, promises, or conduct which in law are sufficient to support an agreement.*

Under our constitution and lottery statute, therefore, one need not part with something of value, tangible or

intangible, to supply the essential consideration for a lottery. He may, in order to secure a chance to win a prize awarded purely by lot or chance, supply the consideration by his conduct or forbearance which vouchsafes a gain or benefit to the promoter of the scheme. The benefit or gain moving to the one need not be the same as the detriment to the other. *Consideration for a lottery may be both gain and detriment or one without the other.*

(Final sets of italics ours.)

In holding that the "bonus bingo" game in *Safeway* constituted a lottery, we found that the time, thought, attention and energy expended by members of the public in studying Safeway's advertising and journeying to a Safeway store to procure a prize slip, as well as the actual increase in patronage that resulted from the contest amounted to consideration moving from player to promoter.

The Reader's Digest Sweepstakes is a mail order equivalent of Safeway's "bonus bingo." As with the Safeway promotion, the Sweepstakes requires no purchase to enter, and the entrant's chance of winning is not increased by making a purchase. In both cases these facts were conspicuously displayed on the promotion literature. The Sweepstakes is designed as an advertising attention getting device, as was "bonus bingo," and is, by respondent's own admission, far superior to other forms of advertising. It has not only increased subscriptions to respondent's products, but has caused a corresponding increase in advertising revenues.

The only significant difference between "bonus bingo" and the Sweepstakes is that the latter does not require a trip to the store to secure an entry form. That difference, however, is not sufficient to distinguish the cases. The store visit, standing alone, was not the detriment to the participant that produced the benefit to Safeway. More critical was the participant's expenditure of time, thought, attention and energy in perusing Safeway's advertisements. The whole purpose of "bonus bingo" was to attract attention to its advertising. Similarly, the purpose of the Sweepstakes promotion is to attract attention to respondent's advertis-

ing. Respondent's own officer testified that the Sweepstakes is an "attention getting device" comparable to using "four colors in a brochure" or "tipping a penny into a mailing." Thus, in both "bonus bingo" and the Sweepstakes the thing sought by the promoter from the participant was the latter's attention directed to the former's advertisements. This constitutes a detriment to the participant. The corresponding increase in sales that results from the success in attracting the attention of the participants constitutes the benefit to the promoter.

We said in *Safeway* that "[c]onsideration for a lottery may be *both* gain and detriment *or one without the other.*" (Italics ours.) We have in the case before us, as in *Safeway,* *both* detriment to the participant and gain to the promoter. Thus, we hold as a matter of law that there is consideration sufficient to constitute a lottery.

This action was brought by the Attorney General under section 2 of the Consumer Protection Act, RCW 19.86.020, which provides:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

The language was taken virtually verbatim from section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).[3] The Consumer Protection Act (RCW 19.86.920) further declares that:

> [T]he purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. It is the intent of the legislature that, in construing this act, the courts be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters . . . To this end this act shall be liberally construed that its beneficial purposes may be served.

[3] *See* Dewell & Gittinger, *The Washington Antitrust Laws,* 36 Wash. L. Rev. 239, 251-55 (1961) and O'Connell, *Washington Consumer Protection Act—Enforcement Provisions and Policies,* 36 Wash. L. Rev. 279, 280 (1961).

■ Our constitution, article 2, section 24, prohibits lotteries and RCW 9.59.010 makes the operation thereof a criminal offense. What is illegal and against public policy is per se an unfair trade practice. The Sweepstakes is a lottery and therefore is per se unfair.[4] As we said in *Safeway*, at page 351:

> The antigambling laws are designed not only to prevent loss but to preclude some kinds of gain to the promoter of a lottery from reaping an unearned harvest at the expense of the players; to prevent the wary from preying upon the unwary; and to discourage the overly shrewd from exploiting the natural yearning in most everyone to get something for nothing; and to put a damper on the actions of those who receive from the device much more than they part with in prizes. If, under our mores, it is bad for a man to lose his property on pure chance or lot, it is equally bad for a man to gain property on the same pure chance or lot.

Respondent argues that such a result is inconsistent with federal law, citing *Federal Communications Comm'n v. American Broadcasting Co.*, 347 U.S. 284, 98 L. Ed. 699, 74 S. Ct. 593 (1954) to support its contention that the Sweepstakes is not a lottery. In that case, the Federal Communications Commission, acting pursuant to 18 U.S.C. § 1304, adopted rules banning radio and television programs that gave away prizes by chance and which required the winner to: (1) furnish "money or something of value;" or (2) listen to or view the program in question; or (3) answer correctly a question, the answer to which or the aid for answering which had been broadcast over the station; or (4) answer the phone in a prescribed manner or

---

[4]Our holding is in accord with federal trade law. Lotteries are unfair trade practices under section 5 of the FTC Act. *Federal Trade Comm'n v. R.F. Keppell & Bro., Inc.*, 291 U.S. 304, 78 L. Ed. 814, 54 S. Ct. 423 (1934); *Peerless Prods., Inc. v. Federal Trade Comm'n*, 284 F.2d 825 (7th Cir. 1960), *cert. denied*, 365 U.S. 844, 5 L. Ed. 2d 809, 81 S. Ct. 804 (1961); *Globe Cardboard Novelty Co. v. Federal Trade Comm'n*, 192 F.2d 444 (3d Cir. 1951); *Wolf v. Federal Trade Comm'n*, 135 F.2d 564 (7th Cir. 1943); *Ostler Candy Co. v. Federal Trade Comm'n*, 106 F.2d 962 (10th Cir. 1939), *cert. denied*, 309 U.S. 675, 84 L. Ed. 1020, 60 S. Ct. 712 (1940).

otherwise make a prescribed response, the correct manner or response being broadcast over the station. Since prize and chance had been admitted by the American Broadcasting Co., the only issue was whether there was consideration. The commission argued that commercial benefit to the promoter alone satisfied the requirement of consideration. The broadcasters urged that money or something of value contributed by the contestants was required. The court opted for the broadcasters' definition, and, while sustaining subdivision (1) of the rule, held that the activity proscribed in subdivisions (2), (3), and (4) did not constitute a lottery and hence those subdivisions were invalid.

In striking down a lottery under our constitution and laws, we are not bound by the definition of lottery followed in the federal courts when that definition is contrary to one we have consistently followed. Since we do not adhere to the definition of consideration used by the court in *American Broadcasting Co.*, the case is inapposite.

Respondent further argues that our decision conflicts with federal law because an FTC cease and desist order, previously issued to respondent, implicitly allows the Sweepstakes to continue. Respondent's contention is too broad. The order deals only with the deceptive aspects of the Sweepstakes promotion. It contains no indication that the commission considered the lottery issue.

On cross-appeal, respondent challenges the constitutionality of RCW 19.86.020 on the ground of vagueness. It admits the language is virtually the same as that in the federal act. It asserts, however, that the vagueness of the federal act is cured by procedural safeguards. Respondent indicates that federal procedure provides for a cease and desist order from which one may appeal and that a citizen is subject to penalty only if he continues the activity after an adverse judicial determination. Respondent urges that the vagueness of the federal act is thus redeemed by providing the definition of an offense before jeopardy attaches. On the other hand, the Washington act lacks such a procedure. Thus, respondent contends there is an issue of proce-

dural due process due to vagueness. We do not reach the issue, however. In the instant case the trial court suspended respondent's liability for the "civil penalty" pending trial. Thus, no jeopardy could have attached until after a judicial determination that the Sweepstakes was an unfair trade practice.

That being the case, we do not reach the question of whether the imposition of a "civil penalty," prior to a judicial determination that an activity constitutes an "unfair method of competition" or an "unfair or deceptive act or practice," denies procedural due process.

Respondent's theory of retrospective jeopardy does not stand up under scrutiny for another reason. It is based on the false premise that the phrases "unfair methods of competition" and "unfair or deceptive acts or practices in the conduct of any trade or commerce" are so vague that they deny substantive due process.[5]

---

[5]The cases upon which respondent bases its theory are inapposite. In *Sears, Roebuck & Co. v. Federal Trade Comm'n,* 258 F. 307 (7th Cir. 1919), the court sustained section 5 of the FTC Act specifically holding that the phrase "unfair method of competition" was not vague. The court's reasoning did not turn on the federal act's procedural safeguards.

Respondent also cites: *National Candy Co. v. Federal Trade Comm'n,* 104 F.2d 999 (7th Cir. 1939), *cert. denied,* 308 U.S. 610, 84 L. Ed. 510, 60 S. Ct. 174 (1939); *Federal Trade Comm'n v. A. McLean & Son,* 84 F.2d 910 (7th Cir. 1936), *cert. denied,* 299 U.S. 590, 81 L. Ed. 435, 57 S. Ct. 117 (1936); *Arkansas Wholesale Grocers' Ass'n v. Federal Trade Comm'n,* 18 F.2d 866 (8th Cir. 1927), *cert. denied,* 275 U.S. 533, 72 L. Ed. 411, 48 S. Ct. 30 (1927). In *National Candy Co.* the court merely noted that the federal act's provision for judicial review of an administrative order constituted due process of law. There was no indication that vagueness was an actual issue, however. In *A. McLean & Son* the court saw no violation of the constitutionally mandated separation of powers and no violation of due process. Vagueness was not mentioned. In *Grocers' Ass'n* the court held that section 5 was not an unconstitutional delegation of powers and that the commission's *cease and desist order* was not indefinite. Thus, section 5 was not challenged for vagueness in any of the cited cases except for *Sears* in which it was sustained.

Finally, respondent relies on *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 79 L. Ed. 1570, 55 S. Ct. 837 (1935). The National Industrial Recovery Act was struck down because it was an

 Without question, the due process clause of the Fourteenth Amendment requires that people be given notice of what is prohibited. If a statute fails to give fair warning, it is subject to challenge for vagueness or indefiniteness.[6] But, as Mr. Justice Frankfurter commented, what constitutes indefiniteness is itself indefinite:

> There is no such thing as "indefiniteness" in the abstract, by which the sufficiency of the requirement expressed by the term may be ascertained. The requirement is fair notice that conduct may entail punishment. But whether notice is or is not "fair" depends upon the subject matter to which it relates. . . . That which may appear to be too vague and even meaningless as to one subject matter may be as definite as another subject-matter of legislation permits . . .

*Winters v. New York,* 333 U.S. 507, 524, 92 L. Ed. 840, 68 S. Ct. 665 (1948), Frankfurter, J., dissenting.

"Common intelligence" is the test of what is fair warning:

> [A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.

*Connally v. General Constr. Co.,* 269 U.S. 385, 391, 70 L. Ed. 322, 46 S. Ct. 126 (1926). *Accord, State v. McDonald,* 74 Wn.2d 474, 477-78, 445 P.2d 345 (1968); *State v. Galbreath,* 69 Wn.2d 664, 668, 419 P.2d 800 (1966).

 In the field of regulatory statutes governing business activities, greater leeway is allowed in applying the

---

unconstitutional delegation of legislative powers, however, not because it was vague. The court's comparison of the Recovery Act with the Trade Commission Act was to contrast a proper delegation of administrative power with sufficient safeguards to an improper delegation of legislative powers without safeguards. The court did not indicate that the procedural safeguards of the Trade Commission Act cured substantive due process inadequacies.

[6] For an analysis of the requirement of definiteness in statutes, *see* Amsterdam, *The Void for Vagueness Doctrine of the Supreme Court,* 109 U. Pa. L. Rev. 67 (1960).

test. *Papachristou v. Jacksonville,* 405 U.S 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972) and cases cited therein. Thus statutes which employ special or technical words or phrases well enough known to enable those expected to use them to correctly apply them, or statutes which use words with a well settled common-law meaning, will generally be sustained against a charge of vagueness. *Winters v. New York, supra* at 515, n.4; *Connally v. General Constr. Co., supra* at 391. Furthermore, the United States Supreme Court has treated sympathetically "state statutes that deal with offenses, difficult to define, when they are not entwined with limitations on free expression." *Winters v. New York, supra* at 517.

Although the constitutional question of the vagueness of section 5 of the FTC Act has not been before the United States Supreme Court,[7] that court, in acknowledging that the act's terms do not admit to precise definition, has said that the meaning of its terms "must be arrived at by what this court elsewhere has called 'the gradual process of judicial inclusion and exclusion.'" *Federal Trade Comm'n v. Raladam Co.,* 283 U.S. 643, 648, 75 L. Ed. 1324, 51 S. Ct. 587, 79 A.L.R. 1191 (1931). *Accord, Federal Trade Comm'n v. R. F. Keppel & Bro., Inc.,* 291 U.S. 304, 312, 78 L. Ed. 814, 54 S. Ct. 423 (1934). *See also Federal Trade Comm'n v. Gratz,* 253 U.S. 421, 427, 64 L. Ed. 993, 40 S. Ct. 572 (1920).

The language of the amended federal act, from which RCW 19.86.020 is taken, has been with us since 1938. The federal courts have amassed an abundance of law giving shape and definition to the words and phrases challenged by respondent. Now, more than 30 years after the Supreme Court said that the phrase "unfair methods of competition" does not admit to "precise definition," we can say that phrase, and the amended language has a meaning well settled in federal trade regulation law. RCW 19.86.920 directs us to be guided by the federal law. Thus, in inter-

---

[7]The constitutionality of the act was sustained against the vagueness charge, however, in *Sears, Roebuck & Co. v. Federal Trade Comm'n,* 258 F. 307 (7th Cir. 1919).

preting the language of RCW 19.86.020 we must hold that the phrases "unfair methods of competition" and "unfair or deceptive acts or practices" have a sufficiently well established meaning in common law and federal trade law, by which we are guided, to meet any constitutional challenge of vagueness.

Respondent contends that RCW 19.86.920 should be construed to incorporate only federal judicial precedents existing on the date of its enactment. It cites *Yelle v. Bishop*, 55 Wn.2d 286, 303, 347 P.2d 1081 (1959) and *State ex rel. Kirschner v. Urquhart*, 50 Wn.2d 131, 310 P.2d 261 (1957) in which we held at page 137:

> Statutes adopting existing Federal rules, regulations, or statutes, are valid, but attempts to adopt future Federal rules, regulations, or statutes, are unconstitutional and void.

The *adoption* of *future* federal rules, regulations or statutes would be an unconstitutional delegation of legislative power.

The rule, however, does not necessarily require the result reached by respondent. RCW 19.86.920 does not *adopt* any federal judicial precedents. It merely states that in construing the act the state courts are to be *guided* by the interpretation given by federal courts to federal statutes dealing with similar matters. In the final analysis, the interpretation of RCW 19.86.020 is left to the state courts. This enables us to arrive at the statute's meaning by the same "gradual process of judicial inclusion and exclusion" used by the federal courts. When appropriate we will consider the pertinent federal court interpretations of section 5 of the FTC Act. But in each case the question of what constitutes an "unfair method of competition" or an "unfair or deceptive act or practice" under RCW 19.86.020 is for us, rather than the federal courts, to determine. Since federal judicial interpretations are *guiding* but not *binding,* we may consider all relevant federal precedent, including that decided after the enactment of RCW 19.86.920.

The meaning of RCW 19.86.020 is well enough known to

those who come within its ambit to allow correct application thereof. Further, as indicated in the federal cases,[8] the area of trade regulation is an area of the law where regulating statutes are not susceptible of precise definition if circumvention is to be prevented. Since trade regulation does not impinge upon the area of constitutionally protected expression, the need for precision is less stringent.

We hold that the phrases in question are not so vague as to violate substantive due process. We also hold that an act which is illegal and against public policy is per se unfair within the meaning of RCW 19.86.020.

Respondent contests the personal jurisdiction of the trial court. The state claims jurisdiction under the long-arm provision in the Consumer Protection Act, RCW 19.86.160, which provides:

Personal service of any process in an action under this chapter may be made upon any person outside the state if such person has engaged in conduct in violation of this chapter which has had the impact in this state which this chapter reprehends. Such persons shall be deemed to have thereby submitted themselves to the jurisdiction of the courts of this state within the meaning of RCW 4.28.180 and 4.28.185.

The question is whether the performance of an unfair trade practice in this state by a foreign corporation which has no agents, employees, offices or other property in the state is a sufficient contact to establish jurisdiction?

We hold that it is. In recent years there has been a clearly discernible trend to liberalize the requirements for establishing personal jurisdiction over nonresidents. The United States Supreme Court has established the minimum contact rule. *Hanson v. Denckla*, 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957); *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945). We have

---

[8]*See, e.g., Federal Trade Comm'n v. R.F. Keppel & Bro., Inc.*, 291 U.S. 304, 312 n.2, 78 L. Ed. 814, 54 S. Ct. 423 (1934).

previously analyzed these cases in *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 381 P.2d 245 (1963), where we stated at page 115:

> there are three basic factors which must coincide if jurisdiction is to be entertained. Such would appear to be: (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnotes omitted.) The refinement of these guidelines in subsequent cases has been analyzed in *Bowen v. Bateman,* 76 Wn.2d 567, 458 P.2d 269 (1969).

In *Thiry v. Atlantic Monthly Co.,* 74 Wn.2d 679, 445 P.2d 1012 (1968) we held that the circulation of an alleged libel in this state constituted the "commission of a tortious act" in the state within the meaning of our general long-arm statute, RCW 4.28.185. The fact that the Atlantic Monthly Company had no employees, property or shareholders and had not been licensed to do business in this state did not deprive our courts of jurisdiction. The Atlantic magazines were distributed in Washington through the mail and on newsstands. Jurisdiction was based on the fact that the claimed damages were suffered within this state even though they resulted from an alleged tortious act occurring outside the state.

Similarly, respondent in this case has no agents, employees, offices or other property within our jurisdiction. Its Sweepstakes promotion is conducted through the mails. Although the Sweepstakes is mailed from New York, the effect of mailing the Sweepstakes to Washington residents constitutes a lottery within this state. Respondent has deliberately and purposefully sought contact with Washing-

ton residents through the mail for the purpose of increasing subscriptions and sales of its products. The venture has been eminently successful. Insofar as jurisdiction is concerned, this activity satisfies the minimum contact requirement that a foreign corporation purposefully do some act within the forum state. The requirement that the cause of action arise out of the activity which supports the minimum contact requirement is also met.

Finally, the assumption of jurisdiction by our courts does not offend traditional notions of fair play and substantial justice. Respondent solicited Washington business and derived substantial profits from Washington residents by clearly illegal methods. It is the duty of the state to protect its residents from such unfair practices. If our courts are not open, the state will be without a remedy in any court and the Consumer Protection Act will be rendered useless.

 In its cross-appeal respondent argues that federal statutory control over lotteries by mail[9] preempts the regulation of mail order lotteries by states. This contention is without merit. While it is true the state is without power to regulate the mail, it is not powerless to prevent respondent from using unfair trade practices within its borders. *Roth v. United States,* 354 U.S. 476, 493-94, 1 L. Ed. 2d 1498, 77 S. Ct. 1304 (1957). The state cannot enjoin the mails, but it can enjoin respondent from conducting the Sweepstakes within its borders, subjecting respondent to the penalties of the Consumer Protection Act for refusal to comply.

 Next, respondent argues that the Sweepstakes is exempted from the Consumer Protection Act because it has been and is now permitted and regulated by the FTC.

---

[9]The mailing of lottery tickets or related matter is a crime. 18 U.S.C. § 1302. The Postmaster General is authorized to hold hearings to determine whether mailed matter falls within such proscription and is authorized to impose certain administrative sanctions. 39 U.S.C. § 4005. The Postmaster General has authority to dispose of any such matter which is deposited in the mails. 30 U.S.C. § 4001. 39 U.S.C. § 501 prescribes his duties, including the issuance of rules and regulations; investigation of postal offenses and execution of laws relating to the Postal Department.

The argument is not preemption, but rather that respondent's activity is exempt under RCW 19.86.170 which provides:

> Nothing in this chapter shall apply to actions or transactions otherwise permitted, prohibited or regulated under laws administered by the insurance commissioner of this state, the Washington utilities and transportation commission, the federal power commission or any other regulatory body or officer acting under statutory authority of this state or the United States . . .

The FTC, however, is not a regulatory body within the meaning of RCW 19.86.170. The term "other regulatory body" must be construed in light of the preceding terms and the intent of the entire act. The *ejusdem generis* rule is that specific words or terms modify and restrict the interpretation of general words or terms where both are used in sequence. *King County Water Dist. 68 v. Tax Comm'n*, 58 Wn.2d 282, 286, 362 P.2d 244 (1961); *State v. Thompson*, 38 Wn.2d 774, 777, 232 P.2d 87 (1951). The specific agencies or bodies mentioned in the statute all regulate areas where permission or registration is necessary to engage in an activity. Once the requisite permission is obtained, the activity is subject to monitoring and regulation. The FTC, however, is not such an agency. It has no control over entry into its area of concern. It merely monitors the business practices of those who freely enter its domain. In this respect its position is analogous to that of the United States Attorney General in his capacity of enforcing the anti-trust laws. In *State v. Sterling Theatres Co.*, 64 Wn.2d 761, 394 P.2d 226 (1964), we concluded that he was not a "regulatory officer" within the meaning of RCW 19.86.170. We held that "surveillance and enforcement activities undertaken by the federal authorities pursuant to consent decrees" do not make a business "a regulated industry within the meaning of the state act."

Furthermore, respondent's interpretation of RCW 19.86.170 would limit the application of RCW 19.86.020 strictly to intrastate commerce since the FTC has authority

to monitor all interstate business. Such a result would require us to ignore RCW 19.86.920 which provides that in determining the relative market or effective area of competition we *should not be limited to the boundaries of this state.*

We hold that the FTC is not a "regulatory body" within the meaning of RCW 19.86.170 and that respondent is not exempt thereunder.

 Finally, the state has assigned error to the trial court's order suspending civil penalties pending trial. That assignment is not argued in their brief. Assignments of error not argued will not be considered. *In re Port of Seattle,* 80 Wn.2d 392, 399, 495 P.2d 327 (1972); *State v. Jacobsen,* 78 Wn.2d 491, 494, 477 P.2d 1 (1970).

Our disposition of this case makes it unnecessary for us to consider whether respondent's methods of conducting the Sweepstakes are deceptive, whether the "neighbor copy" issue is moot, and whether the exclusion of certain testimony was error.

The judgment is reversed and the case remanded to the trial court for entry of judgment consistent with the views expressed herein.

HAMILTON, C.J., ROSELLINI, HUNTER, HALE, NEILL, WRIGHT, and UTTER, JJ., concur.

FINLEY, J. (dissenting)—The basic issue in this appeal is whether the advertising promotion of the Reader's Digest constitutes a lottery within the meaning of Const. art. 2, § 24.

I disagree with the majority's resolution of this issue. It is difficult at best to believe that the framers of the constitution intended to prohibit such innocuous activities as the contest under consideration by this court. As I stated in *Seattle Times Co. v. Tielsch,* 80 Wn.2d 502, 512, 495 P.2d 1366 (1972):

> In view of the fact that many essentially harmless activities are rendered illegal by the application of contractual consideration principles to a constitutional lottery prohi-

bition, I believe this court should reexamine its definition of consideration in the *Safeway* case [75 Wn.2d 339] and replace it with an out-of-pocket substantial expenditure test.

Contrary to the opinion of the majority, it seems clear that a contest which merely directs the participant's attention to the promoter's advertisements cannot reasonably result in such a "detriment to the participant" as to constitute sufficient consideration for a lottery. Since my view of this issue was fully expressed in *Seattle Times Co. v. Tielsch, supra,* no purpose would be served in further extending this dissent.

Petition for rehearing denied December 5, 1972.