No. 81-203

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

T & W CHEVROLET,

Defendant and Appellant,

vs.

GEORGE A. DARVIAL,

Plaintiff and Respondent.

---

Appeal from:   District Court of the Fourth Judicial District,
In and for the County of Missoula
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

Boone, Karlberg and Haddon, Missoula, Montana
William L. Crowley argued, Missoula, Montana

For Respondent:

Richard A. Weber, Jr. argued, Hamilton, Montana

For Amicus Curiae:

Hon. Mike Greely, Attorney General, Helena, Montana

---

Submitted:   October 21, 1981

Decided:    JAN 21 1982

Filed:  JAN 21 1982

_____
                    Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal by the defendant from an adverse judgment of the District Court of the Fourth Judicial District, in and for the County of Missoula, sitting without a jury, in a contract action for rescission of an automobile installment contract for deceptive trade practices. We affirm.

On October 21, 1978, plaintiff purchased a 1970 Ford Torino from the defendant for a total purchase price of $2,678. Prior to the sale, a salesman, employed by the defendant, represented to plaintiff that the vehicle was in perfect condition and had been "completely gone over." That same day, the salesman went for a test drive with plaintiff in the Ford Torino. During the test drive plaintiff inquired about the stiffness in the steering of the vehicle. The salesman informed plaintiff that the vehicle probably just needed a front-end alignment or that the steering was too tight. At the time of the sale, the defendant did not extend to plaintiff any type of express warranties on the vehicle.

The plaintiff and his wife drove the vehicle for approximately one month before noticing that the tires were wearing unevenly. Plaintiff took the vehicle into another car dealer for an inspection and was informed that the vehicle was unsafe to drive because the front two cross-members of the frame were severely bent and cracked. The damage to the frame was the result of a single accident.

Shortly thereafter, plaintiff brought the vehicle to the defendant for an inspection. The defendant informed the plaintiff that the vehicle was indeed damaged and required

extensive repair work. Upon being informed of the cost of the repairs, the plaintiff notified defendant that defendant could keep the vehicle. Plaintiff then filed suit seeking damages and rescission of the sales contract.

The District Court determined that the defendant had engaged in unfair or deceptive trade practices because its salesman misrepresented the condition of the car. Plaintiff was awarded attorney fees, damage in the amount of the installment contract purchase price ($2,678) and $750 exemplary damages.

The defendant-appellant presents the following issues to this Court for review:

1. Do section 30-14-104, MCA, and the administrative rules promulgated thereunder represent an unconstitutional delegation of legislative power to the Montana Department of Business Regulation?

2. Do section 30-14-104, MCA, and the administrative rules promulgated thereunder represent an unconstitutional delegation of legislative power to the Federal Trade Commission and the federal courts?

3. Is there substantial credible evidence in the record to support the District Court award?

4. Is there sufficient evidence in the record to base an award of exemplary damages under section 30-14-133, MCA, of the Montana Unfair Trade Practices and Consumer Protection Act?

5. Did the plaintiff properly rescind the contract?

Section 30-14-104, MCA, and the administrative rules promulgated thereunder do not represent an unconstitutional delegation of legislative power to the Montana Department of

Commerce, the Federal Trade Commission (FTC) or the federal courts. The Montana Unfair Trade Practices and the Consumer Protection Act (the Act) both contain sufficiently declared policies and sufficiently prescribed standards for guidance to satisfy the guidelines enunciated by Montana case law and pertinent case law in other jurisdictions.

The test of whether an act contains sufficient expressions of legislative policy and intent to guide a department was set down by this Court in Bacus v. Lake County (1960), 138 Mont. 69, 354 P.2d 1056, and reiterated in Douglas v. Judge (1977), 174 Mont. 32, 568 P.2d 530. These two cases hold that a legislature must prescribe with reasonable clarity the limits of power delegated to an administrative agency. Further, these cases hold that, if the legislature fails to do this, then the attempt to delegate will be nullified.

Appellant contends that the Act in question is one that does not meet the test set out in Douglas and Bacus. The contention is that the Act is not specific enough and, therefore, gives the Department of Commerce an unbridled amount of control.

Section 30-14-101 et seq., MCA, were modeled after Section 5 of the FTC Act which was designed to curb "unfair or deceptive acts or practices in the conduct of any trade or practice . . ." The federal act, as well as the state act, was designed to be general in nature because of the type of practices it was designed to regulate. Atlantic Refining Company v. Federal Trade Commission (1965), 381 U.S. 357, 367-368, 85 S.Ct. 1498, 14 L.Ed.2d 443; H.R. Rep. No. 1142, 63rd Cong., 2d Sess. 19 (1914).

-4-

This Act, in almost identical form, has been challenged on similar grounds in several other jurisdictions. In State v. Reader's Digest Association, Inc. (1972), 81 Wash.2d 259, 501 P.2d 290, the Washington version of the Act was challenged on grounds that it was vague and that it was in violation of due process. Though this challenge differs somewhat from the one presented here, the Washington case offers an excellent analysis of the type of legislation involved. The Supreme Court of Washington, in upholding the constitutionality of the Washington act, held:

> ". . . The language of the amended federal act, from which RCW 19.86.020 is taken, has been with us since 1938. The federal courts have amassed an abundance of law giving shape and definition to the words and phrases challenged by respondent. Now, more than 30 years after the Supreme Court said that the phrase 'unfair methods of competition' does not admit to 'precise definition', we can say that phrase, and the amended language has a meaning well settled in federal trade regulation law. RCW 19.86.020 directs us to be guided by the federal law. Thus, in interpreting the language of RCW 19.86.020 we must hold that the phrases 'unfair methods of competition' and 'unfair or deceptive acts or practices' have a sufficiently well established meaning in common law and federal trade law, by which we are guided, to meet any constitutional challenge of vagueness."
> 501 P.2d at 301.

The case of Department of Legal Affairs v. Rogers (Fla. 1976), 329 So.2d 257, again involves an act virtually identical to the one in question here. Rogers dealt specifically with the problem of delegation. In Rogers the Florida Supreme Court upheld the legislative delegation of power stating that the phrases "unfair methods of competition" and "unfair or deceptive acts or practices" have sufficiently well-established meanings to meet any constitutional challenge. Also, the court held that the statutes

imposed a clear and definite standard upon the enforcing authority for defining "unfair methods of competition" and "unfair or deceptive" trade practices. Clearly, this is not an area of law that warrants "laundry list" type legislation. Further, the Florida Supreme Court went on to hold, "[w]e agree and find that the act does not constitute an unlawful delegation of legislative authority but rather conclude that adequate standards have been announced in the act to guide the administrative agency in the exercise of the delegated powers consistent with constitutional dictates." Rogers, 329 So.2d at 265.

The cases cited by appellant are distinguishable because they involve judicial interpretation of legislation that differs greatly from the type of legislation involved here. For instance, Affiliated Distillers Brands Corp. v. Gillis (S.D. 1964), 130 N.W.2d 597, dealt with legislation affecting the state's liquor laws, specifically the size of containers. The court in Gillis merely held one particular regulation invalid because the legislature had specifically enacted sufficient legislation "to cover the field extensively" and the statutory scheme lacked a delegation of authority to the liquor commissioner to secure compliance of licensees by rule or regulation. The court recognized that liquor control laws involve legislation that is very specific and definitive in nature.

When reviewing the constitutionality of a given law, it is important to keep in mind the basic premise, well recognized in Montana, that the constitutionality of a legislative enactment is prima facie presumed, and every intendment in its favor will be made unless its unconsti-

tutionality appears beyond a reasonable doubt. State ex rel. Mills v. Dixon (1923), 66 Mont. 76, 84, 213 P. 227, 229; accord, Board of Regents v. Judge (1975), 168 Mont. 433, 444, 543 P.2d 1323, 1330.

Appellant also contends that section 30-14-104, MCA, and the administrative rules promulgated thereunder represent an unconstitutional delegation of legislative power to the FTC and the federal courts. This contention lacks merit. The statute does not mandate that the Department adopt all future rules of the FTC. Rather, it allows the Department to adopt rules, if it chooses to, so long as those rules are not inconsistent with the rules and decisions of the FTC, the federal courts and this Court. In both its arguments and citations, appellant ignores the discretionary nature of the phrase "the department may make rules interpreting" contained in section 30-14-104, MCA. The effect is that the Department is adopting the standards of the federal rulings, but not necessarily the contents.

In State v. Reader's Digest Association, Inc. (1972), 81 Wash.2d 259, 501 P.2d 290, the court ruled that the interpretation of the act was, in the final analysis, left to the state courts, not the federal courts. The court stated:

> "This enables us to arrive at the statute's meaning by the same 'gradual process of judicial inclusion and exclusion' used by the federal courts. When appropriate we will consider the pertinent federal court interpretations of section 5 of the Federal Trade Commission Act. But in each case the question of what constitutes an 'unfair method of competition' or an 'unfair or deceptive act or practice' . . . is for us rather than the federal courts to determine. Since federal judicial interpretations are guiding but not binding, we may consider all relevant federal precedent including that decided after the

enactment . . ." 501 P.2d at 301.

Both the Act itself and the rules promulgated thereunder satisfy the delegation test of Judge and Bacus. There is no doubt that the statutes were validly enacted and are constitutionally proper.

Appellant next contends there was insufficient evidence presented by the respondent to support the District Court award. Specifically, the contention is that respondent failed to establish the actual value of the vehicle at the time of the transaction and, therefore, failed to prove actual damages.

Appellant has misconstrued the judgment of the District Court. The District Court judgment was based upon rescission--it was not an award of actual damages. From the District Court's conclusions of law we find the statement that, ". . . the plaintiff is entitled to rescission of the contract between the parties and the return of the full amount paid by plaintiff to defendant." Since the judgment was based upon rescission, there is no need to discuss the contention of whether there was substantial evidence on the record to support an actual damage award.

Appellant further contends that there was insufficient evidence to support an award of exemplary damages under section 30-14-133, MCA, of the Montana Unfair Trade Practices and Consumer Protection Act. Appellant alleges that a plaintiff must show malice, oppression, or fraud on the defendant's part to recover exemplary damages.

In section 30-14-101 et seq., MCA, there is no mention of any requirement that a party must first prove malice, oppression or fraud. The damages section, section

30-14-133, MCA, provides:

> "__Damages -- notice to public agencies -- attorney fee -- prior judgment as evidence.__ (1) Any person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby __suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act, or practice declared unlawful by 30-14-103 may bring an individual but not a class action__ under the rules of civil procedure in the district court of the county in which the seller or lessor resides or has his principal place of business or is doing business to recover damages or $200, which ever is greater. The court may, in its discretion, award up to three times the actual damages sustained and may provide such equitable relief as it considers necessary or proper.

> "(2) Upon commencement of any action brought under subsection (1) of this section, the clerk of court shall mail a copy of the complaint or initial pleading to the department and the appropriate county attorney and, upon entry of any judgment or decree in the action, shall mail a copy of such judgment or decree to the department and the appropriate county attorney.

> "(3) In any action brought under this section, the court may award the prevailing party reasonable attorney fees incurred in prosecuting or defending the action.

> "(4) Any permanent injunction, judgment, or order of the court made under 30-14-111 shall be prima facie evidence in an action brought under this section that the respondent used or employed a method, act, or practice declared unlawful by 30-14-103." (Emphasis added.)

The cases cited by appellant in support of its argument do not deal with the section in question; they involve interpretations of other statutes not relevant to the issue presented.

Appellant's final contention is that respondent, by his actions, waived any right to rescind the contract. This contention is not supported by the facts when applied to the statutes.

The record indicates that respondent purchased the vehicle on October 21, 1978, and discovered the damage on or about November 20, 1978. Respondent notified appellant of the damages that same week and delivered the vehicle to the appellant on December 4, 1978, at the time and place requested by appellant. During the following week and after being informed of the damages and cost to repair, respondent informed appellant that he did not want the vehicle and that appellant could keep it.

Section 28-2-1701 et seq., MCA, pertain to the rescission of contracts. The two sections that apply to the facts at hand are sections 28-2-1711 and 28-2-1712, MCA, which provide:

"28-2-1711. When a party may rescind. A party to a contract may rescind the same in the following cases only:

"(1) if the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds or of any other party to the contract jointly interested with such party;

"(2) if, through the fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part;

"(3) if such consideration becomes entirely void from any cause;

"(4) if such consideration, before it is rendered to him, fails in a material respect from any cause; or

"(5) if all the other parties consent."

"28-2-1713. How rescission accomplished. Rescission, when not effected by consent, can be accomplished only by the use on the part of the party rescinding of reasonable diligence to comply with the following rules:

"(1) He must rescind promptly upon discovering the facts which entitle him to

rescind if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind.

"(2) He must restore to the other party everything of value he has received from him under the contract or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

It is clear from a reading of these sections that respondent properly rescinded the contract.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-11-