No. 82-225

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

PAT M. GOODOVER, STATE SENATOR
and CARROLL A. GRAHAM, STATE SENATOR,

> Plaintiffs,

vs.

THE DEPARTMENT OF ADMINISTRATION, et al.,

> Defendants.

---

ORIGINAL PROCEEDING:

Counsel of Record:

> For Plaintiffs:

> > John W. Larson argued, Helena, Montana

> For Defendants:

> > Michael Young argued, Helena, Montana

---

Submitted: September 9, 1982

Decided: October 7, 1982

Filed: OCT 7 - 1982

Thomas J. Kearney
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

In this original proceeding, petitioning State Senators seek a declaratory judgment that House Bill 872 (amending sections 5-17-101 and 5-17-102, MCA, dealing with the Capitol renovation program) violates the Montana Constitution and several Montana statutes. Defendants denied all statutory and constitutional violations and moved for a summary judgment in their behalf. We grant the prayer of petitioners for a declaratory judgment and issue an injunction against further proceedings with respect to the Capitol remodeling, until the consent of the legislature as a whole has been obtained for relocation of the State Senate chambers.

On May 1, 1981, Governor Schwinden approved House Bill 872 (now codified as section 5-17-101, MCA), which doubled the membership on the Capitol Building and Planning Committee and provided that the committee was to serve as the legislature's representative in planning the remodeling of the Capitol. The bill gave the committee the right to "decide. . .the allocation and use of space in the capitol, including without limitation the location of legislative chambers . . ." (section 5-17-102(4), MCA; emphasis added).

The controversy surrounds a proposed move of the Senate chambers from its present location to the space now occupied by the law library. The committee has authorized a move. Petitioners, who seek to block the move, have raised several issues on appeal. They are:

(1) Does the power delegated to the committee violate Art. III, Sec. 1, or Art. V, Sec. 9, of the Montana Constitution or Montana statutes?

(2)  Does the Department of Administration have authority under section 2-17-101, MCA, to allocate space for the legislative branch of government?

(3)  Did the legislature sufficiently approve the renovation program so that any unconstitutional delegation of authority to the committee would be moot?

We will dispose of the third issue first.  Defendants contend that legislative consent under section 18-2-102, MCA, may take two forms: a joint resolution when a money appropriation is not required; a legislative appropriation when funds are required.  Defendants argue that the legislature consented to the proposed move of the Senate chambers by appropriating the money and authorizing the sale of long-range bonds.  Petitioners argue that the legislature did not sufficiently approve the renovation program and that it was the Senate's intent to consider the matter further in January, 1983.

Section 18-2-102(1), MCA, provides in pertinent part:

> "Authority to construct buildings. (1). . .
> a building costing more than $25,000 may not
> be constructed without the consent of the
> legislature.  When a building costing more
> than $25,000 is to be financed in such a
> manner as not to require legislative appro-
> priation of moneys, such consent may be in
> the form of a joint resolution."

"Construction" is defined in section 18-2-101(3), MCA, as including the remodeling of a building.  We interpret the above statute to require legislative consent of a remodeling project to cost in excess of $25,000 and that such legislative consent may take the form of an appropriation of money or a joint resolution.  Here there was an appropriation for the remodeling project. However, we must determine whether, by such appropriation, the legislature intended to approve relocation of the Senate chambers.

Section 5-17-102(4), MCA, gave the Capitol Building and Planning Committee a directive to decide the location of legislative chambers. This directive to "decide" Senate situs belies defendants' contention that the legislature had consented to relocation of the chambers through passage of an appropriation for remodeling. Therefore, we find that the whole legislature has not, at this time, consented to relocation of the Senate chambers.

Next, we must determine whether the legislature could constitutionally delegate to the Capitol Building and Planning Committee, the authority to "decide" location of legislative chambers. Petitioners argue that section 5-17-102(4), MCA, violates the separation of powers provision (Art. III, Sec. 1) and section 5-17-102(3), MCA, because the power given the entire legislature is being delegated to the committee which has power to make substantive decisions. Defendants contend that the delegation of power to the committee is only to "recommend."

Section 5-17-102(4), MCA, gave the committee power to "decide. . .the allocation and use of space in the capitol, including without limitation the location of legislative chambers. . ." We must here determine the meaning of "decide . . .location of legislative chambers . . ."

In looking for legislative intent, we honor the presumption that the statute is constitutional. In T & W Chevrolet v. Darvial (1982), ____ Mont. ____, 641 P.2d 1368, 39 St.Rep. 112, we said: ". . .every intendment in its [constitutionality of a statute] favor will be made unless its unconstitutionality appears beyond a reasonable doubt." 641 P.2d at 1370.

The Montana State Senate, a distinguished, honorable, and independent arm of the legislative body, has the right to determine where it will sit. Pursuant to section 5-17-101, MCA, a long-range building committee was established consisting of six members of the House of Representatives, six members of the Senate, the Director of the Department of Administration, the Administrator of the Architectural Engineering Division of the Department of Administration, a representative of the Governor's office designated by the Governor, and the Director of the Lewis and Clark Area-Wide Planning Organization, who serves as a non-voting member. By enacting section 5-17-102, MCA, the legislature granted this committee, consisting in part of persons who were not members of the legislature, the right to make a decision on location of legislative chambers. However, section 5-17-103, MCA, requires that the decision be reported back to the legislature. That statute provides in part: "The committee shall prepare a written report of its activities and recommendations and present the report to the legislature at each regular session." (Emphasis added.) Certainly this statute does not mandate a useless act. It must anticipate legislative confirmation. If that is true, then the legislature must have intended, in granting the right to "decide," to set forth committee responsibility and not to bind the legislature to the committee's decision. Only this interpretation is consistent with the mandate expressed in section 5-17-103, MCA.

In this case, the committee has, pursuant to section 5-17-102(4), MCA, decided that the Senate chambers shall be moved. The committee now must, pursuant to 5-17-103, MCA, report its decision to the full legislature for approval.

At this point, the requisite approval, as heretofore shown, is lacking.

Since we have determined that the legislature intended for the committee's decision to be ratified by the whole legislature, there has been no unconstitutional delegation of authority. Sections 5-17-102(4) and 5-17-103, MCA, are, by this result, harmonized.

Defendants finally argue that the Department of Administration has authority, pursuant to section 2-17-101, MCA, to allocate space for the legislative branch of government. Defendants argue that pursuant to a recommendation of the committee, the Department of Administration has validly made such an allocation.

Section 2-17-101, MCA, provides:

> "Allocation of office space. The department of administration shall periodically survey the needs of state agencies located in Helena and shall assign space in state office buildings to such agencies. No state agency shall lease, rent, or purchase property for quarters in Helena without prior approval of the department."

We hold that the legislature is not a "state agency." The Department of Administration can allocate space for the legislative branch of government, but the legislature, being an independent body, has the right to determine where it will sit. As previously noted, the full legislature has not approved the decision of the Capitol Building and Planning Committee for removal of the Senate chambers. Until such approval has been granted by the legislature, the Department of Administration is powerless to allocate space for the Senate chambers.

In accordance with this opinion we grant declaratory judgment to petitioners and issue an injunction against

relocation of the Senate chambers until consent has been obtained from the legislature.

_Frank B. Morrison Jr._

We concur:

_John Conway Harrison_

_Gene B. Daly_

_Daniel J. Shea_

_John C. Sheehy_
Justices

-7-

Mr. Chief Justice Frank I. Haswell, dissenting:

I dissent. I would hold that the procedures followed by the committee and legislature in this case were sufficient to pass constitutional muster and that the consent statute was fully complied with.

Legislative consent may take the form of a money appropriation or joint resolution. Section 18-2-102(1), MCA. The majority concedes that here there was an appropriation but then goes beyond the clear language of the statute to examine another statute, section 5-17-102, MCA. The sole controlling statute on the question of legislative consent is section 18-2-102(1), MCA, which provides in pertinent part:

> "(1) . . . a building costing more than $25,000 may not be constructed without the consent of the legislature. When a building costing more than $25,000 is to be financed in such a manner as not to require legislative appropriation of moneys, such consent may be in the form of a joint resolution."

As is apparent from reading section 18-2-102, MCA, the legislature may consent by either a money appropriation or a joint resolution. The majority's action flies in the face of the unambiguous words of that statute. It does not require that any other statute be consulted to determine whether legislative consent has been given and the office of a judge is not to insert what he thinks has been omitted in a statute, section 1-2-101, MCA. Also, legislative consent in the past has taken the form of an appropriation of funds, e.g., the appropriation of money for the New Justice Building.

The legislature here gave its informed consent to moving the senate chambers to the location presently occupied

-8-

by the law library, as is born out by the following facts. Between the 1979 and 1981 legislatures, the Department of Administration gave presentations regarding the Capitol renovation plan to a number of committees including the legislative finance committee, revenue oversight committee, legislative energy forecast committee, legislative audit committee, and the environmental quality council. Moreover, during the 1981 legislature, a packet of materials was placed on each legislator's desk dealing with this plan. Included in each presentation and in the legislators' packets was a proposed floor plan of the third floor of the Capitol, showing the senate occupying the space presently occupied by the law library. On the front page of the materials distributed to the legislators, the fifth paragraph begins with this sentence: "The Senate chambers would be moved from its existing location to the area presently occupied by the law library." The 1981 legislature ratified the decision to move the senate chambers to the law library by appropriating six and three-quarter million dollars for the Capitol renovation project and by authorizing the issuance and sale of five million dollars of long-range building program bonds to finance the improvement costs.

Petitioners next argue that section 5-17-102(4), MCA, violates the separation of powers provision (Art. III, Sec. 1) and section 5-17-102(3), MCA, because the power given the entire legislature is being delegated to the committee which has the power to make substantive decisions. The majority reasons that since section 5-17-103, MCA, requires the committee to report to the legislature and because this has not happened yet, there has been no unconstitutional

-9-

delegation of authority.

However, in my view, we need not decide the abstract question of whether this statute violates the separation of powers doctrine in view of the procedure followed by the committee in treating its decision as a recommendation only and in not attempting to exercise full authority to independently render a binding decision. As such, such action was also in conformance with section 5-17-102(3), MCA.

The majority does not address petitioners' next argument, i.e., that Art. V, Sec. 9, of the Montana Constitution is being violated because the legislators are holding civil offices on the committee and members of the executive branch are holding legislative offices on the committee.

Art. V, Sec. 9, provides:

> "Disqualification. No member of the legislature shall, during the term for which he shall have been elected, be appointed to any civil office under the state; and no member of congress, or other person holding an office (except notary public, or the militia) under the United States or this state, shall be a member of the legislature during his continuance in office."

To constitute a "civil office," the office must, among other things, possess a delegation of a portion of the sovereign power of government to be exercised for the benefit of the public, State ex rel. Barney v. Hawkins (1927), 79 Mont. 506, 257 P. 411, 53 ALR 583. Fact-finding and recommendation-making, as happened here, do not constitute the exercise of sovereign powers. State ex rel. James v. Aronson (1957), 132 Mont. 120, 314 P.2d 849. I would, therefore, hold that since there has been no exercise of sovereign power of government here, the legislators are

not holding a civil office in contravention of Article V, Section 9 and similarly find that, by virtue of the recommendation-making action only, executive branch personnel are not acting as legislators violating Article V, Section 9.

The focus of the third issue is whether the Department of Administration has authority under section 2-17-101, MCA, to allocate space for the legislature. The majority finds that the legislature is not a state agency and that the legislature, being an independent body, has the right to determine where it will sit. I do not quibble with the premise that the legislature has the right to select its meeting place, but that question was not raised by the pleadings and is not at issue here.

What is at issue here is whether the Department of Administration can allocate space for the legislature's use. It is a common tenet of statutory construction that specific statutes govern over general statutes. Section 1-2-102, MCA, and cases interpreting it. The statute specifically addressing this issue is section 5-17-102(4), MCA. In my view, that statute and the interpretation of it given above, should control. Also, the fact that section 2-17-101, MCA, gives the Department of Administration the power to allocate space for the state agencies should not preclude the Department from accepting additional responsibilities as well, when to do so facilitates the smooth running of state government. In the New Justice Building, the Department allocated space for judicial branch personnel, who are clearly not members of the executive branch and not a state agency.

I would grant defendants' motion for summary judgment.


_____
Chief Justice


Mr. Justice Fred J. Weber:

I join in the foregoing dissent of Mr. Chief Justice Haswell.

_____
Justice