DA 07-0616

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 6

DAVID VADER and DONNA VADER,

        Plaintiffs, Appellees and Cross-Appellants,

  v.

FLEETWOOD ENTERPRISES, INC., FLEETWOOD
MOTOR HOMES OF CALIFORNIA, INC.,

        Defendants, Appellants and Cross-Appellees.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV-2004-501
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

           William O. Bronson, Bronson, Luinstra, Rothwell & Young, PLLC,
Great Falls, Montana

      For Appellees:

           Jonathan C. McDonald, Hunt Law Firm, Helena, Montana

           Michael L. Fanning, Attorney at Law, Helena, Montana

      For Amicus Curiae:

           Hon. Steve Bullock, Montana Attorney General, Jesse A. Laslovich,
Assistant Attorney General, Helena, Montana

Submitted on Briefs:  October 22, 2008

Decided:  January 13, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Fleetwood Enterprises, Inc., and Fleetwood Motor Homes of California, Inc. (collectively Fleetwood) appeal from a jury verdict in the First Judicial District Court, Lewis and Clark County. David and Donna Vader (Vaders) cross-appeal from some of the District Court's rulings. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On November 16, 2000, the Vaders purchased a 2000 model Pace Arrow Vision motor home for approximately $119,000 from a Fleetwood dealer in Grand Island, Nebraska. The motor home itself was sold and warranted by Fleetwood, while the chassis of the motor home was separately manufactured and warranted by the Ford Motor Company. At the time of purchase, the Vaders were residents of Arizona. The motor home was titled in Montana. As the Vaders were retired, they intended to use the motor home as their place of residence and travel throughout the United States and Mexico. The Vaders would frequently spend time in Montana to visit family.

¶3 Soon after purchasing the motor home, the Vaders encountered a number of problems with it. These included problems with the leveling jacks, hot water heater, ice maker, and other components. Most importantly, they claimed that the motor home swayed significantly and dangerously while they drove it. The Vaders claim that this swaying/handling problem was so severe that they had to drive through congested areas like bigger cities in the middle of the night, out of a concern that they would not be able to properly handle the motor home in heavy traffic. On several occasions they claimed that the swaying was so bad that they feared for their safety.

2

¶4     The Vaders claim that they noticed these problems, particularly the swaying/handling problem, within the first two months after purchasing the motor home. David Vader testified that he specifically complained in writing about the swaying problem, as well as other problems, to the Fleetwood dealership in Grand Island, Nebraska, in January of 2001. Neither Fleetwood nor the Vaders have a copy of this letter. The Vaders maintain that they sent the letter to the Fleetwood dealership outlining the many problems they were experiencing with their motor home, but that Fleetwood did not remedy the swaying problem.

¶5     The Vaders claim they made numerous attempts over the next two years to have the swaying problem fixed. They visited a Fleetwood dealer in Mesa, Arizona, in 2001, Ford dealers in Yuma, Lake Havasu City, and Bullhead City, Arizona, in 2001 and 2002, and the Fleetwood factory in Riverside, California, in the spring of 2002. They also paid visits to Bitterroot Motors of Missoula, Montana, Travel Time RV of Great Falls, Montana, and J & D Truck Repair, Inc. of Helena, Montana, in 2003. They also claim that they contacted Fleetwood repeatedly about the swaying problem. During this same time period, other problems unrelated to the swaying/handling problem were also brought to Fleetwood's attention and were for the most part remedied. The bottom line for the Vaders, however, is that while Fleetwood did repair some of the problems associated with the motor home, the swaying/handling problem was never addressed. Instead, the Vaders claim that Fleetwood generally referred their swaying/handling complaints to the Ford Motor Company.

3

¶6 On July 2, 2004, the Vaders filed a six-count complaint against Fleetwood and the Ford Motor Company in the First Judicial District Court. Prior to trial, Ford settled with the Vaders and was dismissed from the suit. Counts I (negligence) and IV (strict liability) were dismissed prior to trial. Count II, breach of implied warranty, alleged that Fleetwood breached the implied warranties of merchantability, safe design, and fitness for the motor home's particular use as a motor home because of its defective condition, particularly with regard to compromised drivability and passenger safety due to the swaying problem. Count III, breach of express warranty, alleged that Fleetwood expressly warranted that its motor home was merchantable, safely designed, and fit for the use and purpose of a motor home, and that the Vaders relied on these express warranties when they purchased the motor home. The Vaders alleged that this express warranty was breached due to the swaying problem. The Vaders further alleged that they provided Fleetwood with written notice of these breaches on October 22, 2003.

¶7 Count V alleged that Fleetwood had engaged in unfair or deceptive trade practices which damaged the Vaders. These claims were brought pursuant to Montana's Consumer Protection Act (CPA), Title 30, chapter 14, part 1, MCA. The Vaders claimed that in the course of attempting to address the swaying problem, they had the motor home weighed and discovered that its actual weight was greater than the weight noted on the vehicle's title. Thus, the Vaders alleged that Fleetwood designed, manufactured, and distributed the motor home, the actual weight of which exceeded the weight listed on its title, and that these acts constituted an unfair or deceptive trade practice which caused them damage.

¶8 Count VI was a "Lemon Law" claim, brought pursuant to the new motor vehicle warranties provisions found in Title 61, chapter 4, part 5, MCA. Here, the Vaders alleged that shortly after experiencing problems with their motor home, they reported the problems to Fleetwood in writing and by telephone, expressing to Fleetwood that the motor home did not conform to its express warranties and identifying the necessary repairs. They claimed that Fleetwood first acknowledged this correspondence by a letter dated August 21, 2001. The Vaders alleged that they also drove the motor home to Fleetwood's assembly plant in Riverside, California, as well as several authorized service centers in Montana and Arizona, to allow Fleetwood to complete the repairs necessary to conform the motor home to its express warranty. While some of the repairs were completed, they alleged that the motor home remained nonconforming and was still overweight, and that its condition substantially impaired the use, market value, and safety of the motor home. The Vaders also claimed that in October 2003, they offered to return the motor home in exchange for $100,000, or alternatively, a replacement with an equivalent model, but that Fleetwood rejected this offer. Accordingly, because Fleetwood failed to remedy the motor home's defects after a reasonable number of attempts, the Vaders claimed they were entitled to statutory remedies under Montana law. Those remedies include a replacement vehicle or a monetary refund of the purchase price and incidental damages. *See* § 61-4-503, MCA.

¶9 A jury trial was held on these claims on February 5-8, 2007. The Vaders presented evidence and testified concerning the problems they had with the motor home—particularly the swaying/handling problem which was the focus of their

complaint—and the steps they took in attempting to have these problems remedied. The Vaders presented expert testimony to support their claims. Fleetwood presented its own representatives, as well as expert testimony, in support of its defense. Where necessary, this testimony and evidence will be discussed in greater detail below.

¶10 After both sides rested, Fleetwood and the Vaders both lodged challenges to some of the proposed jury instructions. The Vaders' objections are not relevant to the present appeal. Fleetwood objected to several instructions pertaining to the Lemon Law and CPA claims, arguing that the Vaders had failed to present sufficient evidence as a matter of law to submit those claims to the jury. The District Court overruled the objections. Fleetwood also moved to dismiss the Lemon Law and CPA claims as a matter of law for failure to present sufficient evidence pursuant to M. R. Civ. P. 50. The District Court denied this motion as well, but allowed Fleetwood to file post-trial briefs on the issues.

¶11 The jury returned a verdict in favor of the Vaders. It concluded that Fleetwood violated the Lemon Law, breached an implied or express warranty, and was also liable to the Vaders for damages due to unfair or deceptive acts or practices under the CPA. The jury awarded the Vaders $84,000 in damages.

¶12 Both parties filed post-trial motions. The motions filed by the Vaders concerned an award of attorney's fees, an award of pre-judgment interest, and the type of replacement vehicle that the Vaders were entitled to by virtue of their successful Lemon Law claim. The Vaders also argued for an increase in the jury's award of damages pursuant to § 30-14-133(1), MCA, of the CPA. Fleetwood filed post-trial motions under M. R. Civ. P. 50 and 59 seeking judgment as a matter of law on the Vaders' Lemon Law,

6

CPA and breach of warranty claims. Fleetwood again argued there was insufficient evidence to submit these claims to the jury.

¶13 Following a hearing on the motions, the District Court determined that there had been sufficient evidence presented to support the Vaders' Lemon Law, CPA, and breach of warranty claims, and, further, that the Vaders met the legal requirements for submitting these claims to the jury. The District Court also rejected a challenge by Fleetwood to jury instructions on the breach of warranty claims, noting that Fleetwood failed to object to these instructions at the time they were given. Additionally, the District Court determined that the Vaders were entitled to a replacement motor home as a remedy under the Lemon Law. The District Court also granted the Vaders attorney's fees and doubled the damages pursuant to § 30-14-133(1), MCA, of the CPA. In granting this increase, the District Court explained its reasoning as follows:

> Plaintiffs are seeking attorneys fees and triple damages pursuant to the Consumer Protection Act. Section 30-14-133(3), MCA, allows the Court to award reasonable attorney fees. Section 30-14-133(1), MCA, allows the Court, in its discretion, to award up to three times the actual damages sustained.
>
> The purpose of the Consumer Protection Act is to "level the playing field." The above-noted sections seek to shift the burden from the consumer, who can ill afford a lawsuit, to the person or entity ultimately responsible for the problem. In this case, that would be Defendants. Further, these provisions encourage consumers to pursue their remedies. These remedies should deter inappropriate action by manufactures in the future.
>
> Here, the Court notes that Plaintiffs made any number of attempts to have their problems solved, all to no avail. They even took their motor home to Defendants' manufacturing plant. Although it was serviced once, on a second attempt, Plaintiffs were turned away from the plant when they tried to get their motor home fixed. An unanimous jury has found that all of the problems complained of by Plaintiffs were the fault of Defendants. Therefore, Defendants are the authors of their own misfortune. The Court

7

finds that Defendants should be required to pay Plaintiffs' reasonable attorney fees pursuant to Section 30-14-133(3), MCA. The Court will not triple Plaintiffs' damages, as that could be an excessive award. Section 30-14-133(1), MCA. However, the Court will double the amount of damages awarded by the jury.

¶14 Fleetwood now appeals from the jury award and related post-trial rulings. Fleetwood asserts that the jury's verdict with respect to the Lemon Law, CPA, and breach of warranty claims should be set aside because the evidence presented by the Vaders was insufficient as a matter of law to sustain a finding of liability. Accordingly, Fleetwood asserts the damage award and the award of a replacement home for the Lemon Law violation should be vacated. Additionally, Fleetwood asserts that the District Court erred in doubling the award of damages by the jury under the CPA.

¶15 The Vaders argue that there was sufficient evidence to submit the Lemon Law, CPA, and breach of warranty claims to the jury, and that the verdict and award should be affirmed. The Vaders also cross-appeal, arguing that the District Court abused its discretion when it failed to award them treble damages, as opposed to its award of double damages. Finally, the Vaders request that this Court award attorney's fees incurred on appeal pursuant to the CPA, if the jury award and the post-trial orders by the District Court are affirmed.

¶16 Because Fleetwood concedes that it did not object to jury instructions regarding the Vaders' breach of warranty claims at the time they were given, we conclude that Fleetwood has waived this issue for purpose of appeal. *See Turk v. Turk*, 2008 MT 45, ¶ 16, 341 Mont. 386, ¶ 16, 177 P.3d 1013, ¶ 16 ("The failure to object to a verdict form

8

and/or jury instructions at trial results in a waiver of the right to challenge them on appeal."). Thus, we state the remaining issues on appeal and cross-appeal as follows:

¶17 **Issue One:** *Did the District Court err in denying Fleetwood's motion for judgment as a matter of law with respect to the Lemon Law, CPA, and breach of warranty claims?*

¶18 **Issue Two:** *Did the District Court abuse its discretion in doubling the jury's award under the CPA?*

¶19 **Issue Three:** *Are the Vaders entitled to an award of attorney's fees under the CPA for fees incurred on appeal?*

### STANDARD OF REVIEW

¶20 We review a district court's decision to deny a motion for judgment as a matter of law de novo. *West v. Club At Spanish Peaks*, *L.L.C.*, 2008 MT 183, ¶ 45, 343 Mont. 434, ¶ 45, 186 P.3d 1228, ¶ 45. Judgment as a matter of law is proper only when there is a complete absence of any evidence which would justify submitting an issue to a jury. *West*, ¶ 45. Moreover, when considering such a motion, all evidence and any legitimate inference which might be drawn from that evidence are to be considered in a light most favorable to the party opposing the motion. *West*, ¶ 45.

¶21 A district court's decision to increase an award of damages pursuant to § 30-14-133(1), MCA, of the CPA, is a discretionary ruling which we review for an abuse of discretion. *Plath v. Schonrock*, 2003 MT 21, ¶¶ 12-13, 314 Mont. 101, ¶¶ 12-13, 64 P.3d 984, ¶¶ 12-13. The test for an abuse of discretion is whether the trial

9

court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *Plath*, ¶ 13.

## DISCUSSION

¶22 **Issue One:** *Did the District Court err in denying Fleetwood's motion for judgment as a matter of law with respect to the Lemon Law, CPA, and breach of warranty claims?*

## A. Lemon Law Claims

¶23 In its post-trial motion, Fleetwood argued it was entitled to judgment as a matter of law on the Lemon Law claim because the Vaders failed to meet certain threshold requirements for presenting such a claim. The first alleged threshold was a "notice" requirement pursuant to § 61-4-502, MCA. This statute reads in pertinent part as follows:

> **Notice – warranty enforceable after warranty period – when.** (1) If a consumer notifies in writing the manufacturer or its agent during the warranty period that a new motor vehicle does not conform to all applicable express warranties, the repairs necessary to conform the new motor vehicle to the express warranties shall be made by or at the expense of the warrantor, regardless of the expiration of the warranty period after notification of nonconformity is given by the consumer.

Section 61-4-502(1), MCA.

¶24 Fleetwood asserted that this statute requires a consumer to notify the manufacturer in writing during the warranty period that a motor vehicle is nonconforming as a prerequisite to invoking the remedies of the Lemon Law. Fleetwood asserted that the "warranty period" referred to in this statute is found at § 61-4-501(7), MCA, which expressly defines a "warranty period" as "the period ending 2 years after the date of the original delivery to the consumer of a new motor vehicle or during the first 18,000 miles of operation, whichever is earlier." According to Fleetwood, failure to comply with this

10

"notice" requirement within the statutorily-defined warranty period bars a consumer from later availing herself of a remedy under the Lemon Law.

¶25    In addition, Fleetwood argued that consumers were required to take certain actions within the warranty period prior to bringing a Lemon Law claim pursuant to § 61-4-503, MCA.  This statute reads as follows:

> (1) If after a reasonable number of attempts the manufacturer or its agent or authorized dealer is unable, during the warranty period, to conform the new motor vehicle to any applicable express warranty by repairing or correcting any defect or condition that substantially impairs the use and market value or safety of the motor vehicle to the consumer, the manufacturer shall replace it with a new motor vehicle of the same model and style and of equal value, unless for reasons of lack of availability replacement is impossible, in which case the manufacturer shall replace it with a motor vehicle of comparable market value.
> (2) As an alternative to replacement, the manufacturer may accept return of the new motor vehicle from the consumer upon refund to the consumer of the full purchase price, plus reasonable collateral charges and incidental damages, less a reasonable allowance for the consumer's use of the motor vehicle.  The refund must be paid to the consumer and to a lienholder, if any, in proportion to their interests.

Section 61-4-503, MCA.

¶26    Fleetwood claimed that the Vaders failed to meet these threshold requirements because they did not present evidence that they gave Fleetwood written notice of the swaying/handling problem by the end of calendar year 2002, which it argued was the end of the warranty period.  Additionally, Fleetwood claimed that the Vaders failed to make a reasonable number of attempts to have the swaying/handling problem fixed prior to the expiration of the warranty period.  Fleetwood argued that the first attempt to have the swaying problem addressed occurred in July 2003 when the Vaders took the motor home

11

to J & D Repair in Helena—more than six months past the last date for obtaining relief as contemplated by § 61-4-503, MCA.

¶27 The District Court rejected the argument that § 61-4-502, MCA, imposes a notice requirement on Lemon Law claims. The District Court concluded that the statute related to "those situations where a written notice is given prior to the expiration of the warranty and the warranty is not fulfilled during the warranty period. This is not the issue in this case, and there is no specific requirement of any particular type of notice." With regard to the second statutory requirement, the District Court found that the Vaders presented evidence at trial to the effect that they took the motor home to multiple dealers a total of approximately eight times in an attempt to have the problems resolved within the first two years of the warranty period. The District Court noted that an exhibit placed into evidence by the Vaders showed that they made a complaint about the motor home's suspension on January 7, 2002, which was within the warranty period. Thus, the District Court concluded the Vaders had satisfied the statutory and evidentiary requirements for submitting the Lemon Law claim to the jury.

¶28 Fleetwood argues that the uncontroverted evidence establishes that the warranty period expired by November 2002 and that the Vaders failed to take the steps required under the Lemon Law in order to avail themselves of its remedial purposes. It asserts that the Vaders failed to provide written notice of the swaying problem and failed to make a reasonable number of attempts to have the swaying problem fixed prior to November 2002. Fleetwood concedes that the Vaders did complain in writing about problems with some of the internal components of the motor home (i.e., fixtures,

12

appliances, furnishings and other accessories), but failed to do the same with respect to the "non-residential" components (i.e., the swaying problem). Fleetwood notes that "residential" components are not covered by the Lemon Law. *See* § 61-4-501(5)(b)(ii), MCA. Thus, any complaints about these residential components do not satisfy the notice requirement under the Lemon Law, because only written notice of an issue with a "non-residential" component (in this case, the swaying/handling problem) would be sufficient. Additionally, Fleetwood reiterates the view taken in its post-trial motion that a minimum number of reasonable attempts to have the swaying/handling problem addressed simply did not occur until after the warranty period expired, and that the earliest attempt to address this problem did not actually occur until July 2003—six months after the warranty period ended.

¶29 The Vaders urge us to affirm. They maintain that the District Court correctly concluded that § 61-4-502, MCA, does not impose a notice requirement. However, even if written notice is required, they argue that evidence in the record shows it was satisfied. Furthermore, they argue that they did present evidence showing a reasonable number of attempts to have the motor home repaired within the warranty period. In general, they argue that the reasonableness of such attempts is a question of fact for the jury, and that the jury resolved this question in their favor. More specifically, they point to testimony from David Vader that he repeatedly delivered his motor home to dealerships for repair and complained of the swaying problem, but that the dealers would refuse to attempt to repair or even document the problem in a work order because they viewed it as a chassis problem for which the Ford Motor Company, not Fleetwood, was responsible.

13

¶30    Based on the plain language of § 61-4-502, MCA, we agree with the District Court's ruling with regard to the "notice requirement" under the Lemon Law. "We interpret a statute by looking first to the statute's plain language, and if the language is clear and unambiguous no further interpretation is required." *State v. Johnston*, 2008 MT 318, ¶ 26, 346 Mont. 93, ¶ 26, 193 P.3d 925, ¶ 26. Moreover, when interpreting statutes we view them as part of a whole statutory scheme, and construe them so as to forward the purpose of that scheme. *State v. Burch*, 2008 MT 118, ¶ 27, 342 Mont. 499, ¶ 27, 182 P.3d 66, ¶ 27. The plain language of § 61-4-502, MCA, demonstrates clearly that it was not designed to impose a notice requirement on Lemon Law claims. The statute is entitled "Notice – warranty enforceable after warranty period – when." The intent of this statute is to extend the enforceability of a warranty period in those situations where a consumer provides written notice of a non-conformity to a manufacturer or its agent prior to the expiration of the warranty period in order to ensure that the necessary repairs are completed under the terms of the warranty. We agree with the District Court that this statute is simply inapplicable to the case at bar.

¶31    By contrast, § 61-4-503, MCA, does require a consumer to make a reasonable number of attempts to have a motor vehicle conform to any express warranties within the warranty period. At trial, David Vader testified that he made such attempts within the warranty period, but did not have documentation of these attempts because when he tried to have the swaying problem addressed, the Fleetwood dealerships would tell him to contact Ford Motor Company about the problem and would refuse to write up a work order. The jury clearly found this testimony credible. We conclude there was sufficient

14

evidence for a jury to find that the Vaders had made a reasonable number of attempts to have the swaying/handling problem remedied.

¶32 A motion for judgment as a matter of law is not a device by which parties can invoke a reviewing court's power to reexamine and reweigh the evidence before the jury. The party making this motion must demonstrate a complete absence of any evidence which would justify submitting an issue to a jury. *West*, ¶ 45. Fleetwood has failed to meet this burden. While the jury was certainly not required to believe David Vader's testimony, they apparently did. Thus, the District Court did not err in denying Fleetwood's motion regarding this claim.

**B. CPA Claim**

¶33 In its post-trial motion, Fleetwood argued that the venue provisions of the CPA barred the Vaders' claims. In particular, Fleetwood pointed to § 30-14-133(1), MCA, which states that an aggrieved customer "may bring an individual but not a class action [suit] under the rules of civil procedure in the district court of the county in which the seller, lessor, or service provider resides or has its principal place of business or is doing business to recover actual damages or $500, whichever is greater." The Vaders originally purchased their motor home in Nebraska. Fleetwood argued it was an out-of-state corporation with no presence in the state of Montana, and that the Vaders themselves no longer resided in Montana at the time of suit. Given the specific language in § 30-14-133(1), MCA, Fleetwood argued that the CPA only contemplates claims against sellers actually present in Montana.

15

¶34    Additionally, Fleetwood argued that the Vaders' claims were subject to a two-year statute of limitations under the CPA, and that the Vaders had failed to timely present their claims. It maintained that any CPA claims which were based on allegedly deceptive statements made in Fleetwood's sales literature would have accrued as early as December 2000, and would be prohibited after December 2002. Assuming, therefore, that only claims accruing within two years of the filing of the complaint were viable, Fleetwood argued that no evidence of such practices was offered, and that there generally was no evidentiary basis set forth which would support a CPA claim.

¶35    The District Court denied the motion regarding the CPA claims as well. With respect to the "venue" provisions of the CPA, the District Court deemed this argument waived because it had not been raised prior to trial. The District Court did not directly address the statute of limitations argument in its written order, but apparently concluded that the Vaders had presented sufficient evidence to rebut this claim since it did not grant Fleetwood's motion.

¶36    On appeal, Fleetwood seeks to reframe its venue argument, maintaining that the Vaders' claims are actually barred because they fail to meet the subject-matter jurisdiction provisions of the CPA. In its briefs, Fleetwood acknowledges that its use of the term "venue" in the District Court instead of subject-matter jurisdiction may have caused some confusion in these proceedings, but nonetheless argues that its "clear intent" was to argue the jurisdictional implications of the statute.

¶37    We generally do not address issues raised for the first time on appeal, or a party's change in legal theory on appeal. *Whitehorn v. Whitehorn Farms, Inc.*, 2008 MT 361,

16

¶ 21, 346 Mont. 394, ¶ 21, 195 P.3d 836, ¶ 21.  Having reviewed the post-trial briefs filed by Fleetwood, the transcript, and Fleetwood's briefing on appeal, we conclude that its subject-matter jurisdiction argument is a change in legal theory which was never properly raised before the District Court.  Thus, we decline to address it.

¶38    Turning to Fleetwood's statute of limitations argument, the Vaders argue that Fleetwood waived this defense.  While the Vaders acknowledge that Fleetwood did plead this defense affirmatively in its answer, they assert that Fleetwood's failure to even address this defense until after trial precludes it from asserting it now.  Second, the Vaders maintain that even if this defense is available to Fleetwood, they did present evidence of unfair/deceptive trade practices occurring within two years of the filing of their complaint.  First, they note that under § 61-4-533, MCA, a violation of the Lemon Law is a per se violation of the CPA.  *See* § 61-4-533, MCA ("A violation of any provision of this part is an unfair or deceptive trade practice under Title 30, chapter 14, part 2, and the penalties provided in 30-14-224(1) apply.").  The Vaders argue that Fleetwood's failure to repair the swaying problem with the motor home before the expiration of the warranty period and refusal to replace the nonconforming vehicle as required under the Lemon Law constituted a violation of the CPA.  Additionally, the Vaders argue that they presented other evidence of CPA violations by Fleetwood.  They note that Fleetwood promised a "quiet" and "nearly flawless ride" in its sales materials, and argue that Fleetwood failed to help them when their motor home developed a dangerous sway, simply referring them to Ford.  They maintain that this evidence

17

presents a separate basis for an unfair/deceptive act or practice and also supports their CPA claim.

¶39   The jury specifically found that Fleetwood violated both the Lemon Law and the CPA. Because Fleetwood failed to affirmatively address its statute of limitations defense prior to trial, and did not attempt to limit the jury's consideration of evidence to certain dates or timeframes, there is no way to know whether or to what extent the jury arguably considered evidence of actions undertaken outside of the statute of limitations period. At a minimum, however, the Lemon Law violation is sufficient evidence that a CPA violation occurred as well. The Lemon Law violation occurred with the statute of limitations period, and was by itself sufficient to support the Vaders' CPA claim.

¶40   Again, because Fleetwood is challenging the denial of its post-trial motion for judgment as a matter of law, it has the burden of demonstrating a complete absence of any evidence which would allow the Vaders to submit their CPA claim to the jury. Clearly, the Vaders presented sufficient evidence to sustain this claim, and Fleetwood has failed to meet its burden in this regard. Thus, we affirm the District Court with regard to the CPA claim as well.

**C. Breach of Warranty Claims**

¶41   Fleetwood also argued in its post-trial motion that the Vaders' claims for breach of implied and express warranties were not supported by sufficient evidence and should not have been submitted to the jury. Fleetwood argued that the evidence showed that David Vader reviewed the express warranties associated with the motor home, and knew that Fleetwood's limited warranty did not cover the chassis and its component parts, as these

18

were covered separately by the Ford Motor Company's warranty. The District Court rejected this argument by noting that in one of Fleetwood's "sales brochures, [it] promised a 'flawless ride.' They jury could have easily found, and probably did, that this sort of statement, although made in a sales brochure, arose to the level of an express warranty."

¶42 We agree with the District Court, and conclude that Fleetwood's appeal of the denial of its post-trial motion with regard to this claim is without merit. Once again, a post-trial motion for judgment as a matter of law is not an invitation to reweigh the evidence, but only to determine whether there was any evidence which would support submitting a particular claim to the jury. The District Court correctly reasoned that the jury could have concluded that one of Fleetwood's sales brochures, which was admitted into evidence and promised a "flawless ride," created an express warranty which was subsequently breached. Thus, we affirm the District Court with respect to the breach of warranty claims as well.

¶43 **Issue Two:** *Did the District Court abuse its discretion in doubling the jury's award under the CPA?*

¶44 As noted above, (*see* ¶ 13), the District Court doubled the award of damages for violations of the CPA. Fleetwood asserts the District Court abused its discretion in so doing. Although § 30-14-133, MCA, of the CPA does allow the District Court to treble damages, Fleetwood maintains that under *Plath* the increase of damages is not intended to punish but instead to be "compensatory and remedial" rather than punitive. *See Plath*, ¶ 27. Fleetwood maintains the District Court's rationale was based, in part, on a

deterrence rationale which Fleetwood claims makes the doubling of the award for all practical purposes "a judicially-imposed punitive damage award." Fleetwood asserts that this doubling of punitive damages is both contrary to the CPA and raises serious constitutional concerns in light of such cases as *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S. Ct. 1589 (1996) and *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 123 S. Ct. 1513 (2003), which address the impropriety of excessive punitive damage awards. Accordingly, Fleetwood argues the doubling of damages by the District Court should be reversed.

¶45 The Vaders and the State, appearing as Amicus, both argue that the doubling of the damage award under the CPA was within the discretion of the District Court. Ironically, the Vaders also claim on cross-appeal that the District Court abused its discretion when it failed to treble the damages because treble damages are allowed under the CPA and do not lead to an excessive award.

¶46 In *Plath*, we discussed the practical application of the treble damages provision of the CPA. In that case, a district court refused to increase an award of damages under the CPA because the plaintiffs failed to show that a defendant had engaged in any "culpable behavior." *Plath*, ¶ 16. We explicitly rejected the notion that such a showing was required and remanded the matter to the district court. As we stated in our holding,

> The District Court erred when it ruled treble damages would not be awarded because the evidence did not support a finding generally associated with punitive damages. The purpose of the trebling provision of the Montana Consumer Protection Act is to promote or encourage private individuals to pursue violations of Montana's Consumer Protection Act by making it more economically feasible to pursue those claims where actual damages are minimal. Montana's treble damages provision is purely a

20

discretionary function of the district court and such awards should be determined on a case-by-case basis. A district court decision whether or not to award treble damages under the Act should be guided by the overall purpose of the Act itself, which is to protect the public from unfair or deceptive practices engaged in by trade or commerce. The specific purpose of the treble damage provision is to encourage consumers to bring these civil actions by making it more economically feasible.

*Plath*, ¶ 28.

¶47 Based on a portion of the above-quoted language, Fleetwood suggests that an increase of damages cannot be made unless the actual damages are "minimal." But as the State correctly notes, nothing in the statute itself suggests any such requirement. Instead, Montana's CPA gives district courts discretion, without imposing any particular criteria, to grant an award of treble damages if it finds that such an increase will further the purpose of the CPA. *See Plath*, ¶ 22 (noting that, among jurisdictions which have consumer protection acts, Montana's CPA falls in the class of the "distinct minorit[y] of consumer protection acts [which] allow for a purely discretionary award of treble damages."). In *Plath*, we noted that the CPA's treble damage provision does not require any "specific conduct that would trigger imposition of the treble damage award" and further observed that this treble damage award "is not punitive in nature and . . . does not require specific intentional conduct on the part of the defendant." *Plath*, ¶ 27. In other words, the treble damages provision does not "require a plaintiff to prove malice, oppression, or fraud, which under Montana law is prerequisite conduct necessary to allowing punitive damages." *Plath*, ¶ 26 (citing *T & W Chevrolet v. Darvial*, 196 Mont. 287, 293, 641 P.2d 1368, 1371 (1982)). Although, in practical terms, "the trebling

21

function has a deterrent effect, it is used primarily as a compensatory measure, and thus is not intended to be punitive." *Plath*, ¶ 25.

¶48 Fleetwood has not argued that *Plath* was wrongly decided or should be overruled. Instead, Fleetwood maintains that the District Court's reasoning shows that it was basing its decision on a deterrence rationale which went beyond the compensatory rationale adopted in *Plath*. However, in *Plath* we highlighted the fact that punitive damages are awarded in response to a plaintiff's showing of "malice, oppression, or fraud" by the defendant. If the District Court stated that it was trebling damages in order to punish such conduct, then Fleetwood's case would arguably have some merit. Here, the District Court's rationale shows that the doubling of the damage award was designed to "level the playing field" and deter inappropriate action by manufactures in the future. This satisfies the remedial purpose inherent in the trebling damages provision, and was within the District Court's discretion.

¶49 Moreover, it was equally within the District Court's discretion to award only a doubling of damages, instead of a trebling of damages as requested by the Vaders. The language of the treble damages provision is discretionary, and the District Court certainly did not commit an abuse of discretion by awarding a doubling of damages, as opposed to a tripling of damages, or no increase at all. Thus, we affirm the District Court's award.

¶50 **Issue Three:** *Are the Vaders entitled to an award of attorney's fees under the CPA for fees incurred on appeal?*

¶51 The Vaders assert that attorney's fees are available for consumers who successfully secure a CPA award, and that fees incurred on appeal should be awarded as

well. The Vaders argue that this Court seemingly recognized the validity of such an award of attorney's fees in *Baird v. Northwest Bank*, 255 Mont. 317, 843 P.2d 327 (1992). They also argue that other jurisdictions allow an award of attorney's fees incurred on appeal in successfully defending an award under consumer protection laws. *See e.g.*, *Cange v. Stotler & Co.*, 913 F.2d 1204, 1211 (7th Cir. 1990); *Jordan v. Transnational Motors, Inc.*, 537 N.W.2d 471, 474 (Mich. App. 1995); *Wash. State Phys. Ins. Exch. & Assn. v. Fisons Corp.*, 858 P.2d 1054, 1074 (Wash. 1993). The Vaders request that we remand this matter to the District Court to determine the amount of attorney's fees which should be awarded for defending their verdict on appeal.

¶52 Given that Fleetwood has not objected to an award of attorney's fees for work performed on appeal, we grant the Vaders' request to remand this matter to the District Court. Although no Montana cases explicitly hold that attorney's fees may be awarded for work performed in defending a CPA award on appeal, we did appear to implicitly recognize their availability in *Baird*. *See Baird*, 255 Mont. at 329, 843 P.2d at 334-35. Section 30-14-133(3), MCA, of the CPA states that "[i]n any action brought under this section, the court may award the prevailing party reasonable attorney fees incurred in prosecuting or defending the action." Clearly, the Vaders' appeal was necessary to defend their award under the CPA. Moreover, as the Vaders note, other jurisdictions with consumer protection acts do allow attorney's fees incurred on appeal. Thus, we remand this matter to the District Court for a determination and assessment of reasonable attorney's fees incurred on appeal.

**CONCLUSION**

23

¶53 We affirm the District Court's denial of Fleetwood's post-trial motions for judgment as a matter of law with respect to the Lemon Law, CPA, and breach of warranty claims. We further hold that the District Court did not abuse its discretion when it doubled the award of damages pursuant to § 30-14-133(1), MCA, of the CPA. Finally, we remand this matter to the District Court in order to determine a reasonable award of attorney's fees incurred by the Vaders on appeal in defending their award for violations of the CPA.

/S/ PATRICIA COTTER

We concur:

/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS